A96A1431. JOHNSON v. THE STATE.
(475 SE2d 918)

SMITH, Judge.

Eric Henry Johnson was found guilty by a jury of four counts of rape, two counts of incest, and one count of child molestation. Judgments of conviction and sentences were entered thereon and Johnson's motion for new trial was denied.

1. Johnson contends the evidence was insufficient to support his convictions. Johnson lived in Savannah with his wife, her daughter from a previous marriage, and two daughters from this marriage. He also had three sons from a previous marriage. Construed to support the jury's verdict, the evidence presented at trial showed that Johnson molested his stepdaughter and the older of his two biological daughters from this marriage over an extended period of time. In 1993, when the girls were 18 and 16, each girl learned that Johnson was also molesting the other, and they immediately told their mother, who notified the police. She immediately separated from Johnson.

Both victims testified at trial. The older girl, who was Johnson's stepdaughter, testified that Johnson began touching her on her chest and between her legs while she was in bed when she was about nine years old. The molestation progressed to intercourse when she was about 12 and continued after she turned 14. It usually occurred in

---

the basement of their home or in her bedroom, approximately every other day. The house consisted of three levels: the basement; the first floor, on which Johnson and his wife operated a record and tape store; and the second floor, where the family's living quarters were located, including six or seven bedrooms. Before having intercourse with her, Johnson would show her magazines depicting intercourse in "different positions."

The younger girl, Johnson's daughter, testified that she was ten when her father began touching her on her breasts and genitals and that these incidents usually occurred in her room or the kitchen. The girls' mother worked nights as a nurse at a local hospital at the time, and the touching occurred at night when their mother was working. Johnson's daughter testified that she protested, but Johnson persisted, telling her that her mother would kill him if she told. The molestation began with touching but progressed to intercourse when she was 12; it continued, against her will, after she turned 14. Although she could not say the exact number of times this occurred, she testified it was more than ten times.

The State also presented evidence of a number of similar transactions. Five witnesses were Johnson's stepdaughters from a previous relationship. Each testified that Johnson had molested her when she was a child while he lived with her mother, who worked nights. All testified to fondling, and one testified to intercourse. The State also presented the testimony of another of Johnson's adult daughters, who never lived with him. She testified that Johnson showed her pictures of a sexual nature and fondled her during visits, when she was 11 or 12 years old.

Johnson's wife, in addition to testifying about her daughters' revelations that Johnson had been molesting them, testified that he had forced her many years ago to have sexual relations with a 13-year-old girl who worked in their shop, while he took Polaroid photographs of them. The girl, who was an adult at the time of trial, testified that Johnson essentially "blackmailed" her into having sexual relations with his wife and with another woman by taking pictures of her while she used the restroom at his shop. She testified that Johnson had been having sex with her from the time she was 11 until she left when she was 17 and that he threatened to reveal this to his wife.

A police officer testified that in a search of Johnson's home, x-rated videos and pornographic magazines were found in the shop and the basement, and other x-rated videos were found in the bedroom, along with a Polaroid camera and various items of sexual paraphernalia. The State also introduced into evidence the Polaroid photographs taken by Johnson depicting the sexual activity between his wife and the 13-year-old girl.

This evidence was more than sufficient to authorize the jury to

convict Johnson of the crimes charged under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Johnson contends the trial court erred in admitting into evidence the Polaroid photographs depicting sexual activity between his wife and a 13-year-old girl.

Johnson gave the photographs to the attorney representing him in the divorce action filed against him and instructed him to use them "as needed." In the midst of the divorce action, Johnson was arrested on these charges. His divorce attorney testified that although he did not represent Johnson in the criminal action, he did file a bond motion in order to get Johnson released from jail so that he could deal with the domestic relations case.

At the bond hearing, that attorney showed the district attorney the Polaroid photographs Johnson had given him. He testified that he did so in order to compromise the credibility of Johnson's wife, who he believed would be the State's "star witness." He was unaware at that time that Johnson had taken the photographs. When the district attorney insisted that the photographs be turned over as contraband, Johnson's attorney realized he was holding what he referred to as a "hot potato." He moved the court to seal the photographs and place them in the superior court clerk's office. The court granted the motion and the photographs were sealed.[1] The court subsequently granted the State's motion to unseal the photographs and turn them over to the police department to be held as evidence in this case.

Johnson argues that the photographs were confidential communications protected by the attorney-client privilege and should not have been admitted in evidence. We do not agree.

OCGA § 24-9-24 provides that "[c]ommunications to any attorney . . . pending his employment or in anticipation thereof shall never be heard by the court." But these photographs were not "communications." They were tangible evidence of a similar crime, and that similar transaction was ruled admissible at a pretrial hearing.[2] Clearly, the photographs could have been seized had they been found in Johnson's possession. They illustrated Johnson's lustful disposition and his propensity for sexual activity with children, and they were admissible for that reason. See generally *Cunningham v. State*, 196 Ga. App. 68 (1) (395 SE2d 330) (1990).

Nor were the photographs protected by any privilege. The fact that Johnson gave them to his attorney did not make them privi-

---

[1] Johnson discharged this attorney.

[2] In addition, because both Johnson's wife and the other person depicted in the photograph testified to the acts portrayed in the photographs, even if the admission of the photographs were error it would be harmless. *Riggins v. State*, 179 Ga. App. 179, 180 (2) (345 SE2d 897) (1986).

leged. "It is axiomatic that one cannot render privileged that which is not privileged merely by placing it in the hands of his attorney." (Citations and punctuation omitted.) *Atlantic Coast Line R. Co. v. Daugherty*, 111 Ga. App. 144, 150 (141 SE2d 112) (1965). Even if considered "communications," the photographs were not privileged; Johnson instructed his attorney to use them as he felt proper, an instruction that necessarily authorized Johnson's attorney to disclose their existence and content to others. *Shelton v. State*, 206 Ga. App. 579, 580 (1) (426 SE2d 69) (1992). It is true, as pointed out by Johnson, that he did not specifically authorize his divorce attorney to disclose the photographs to the district attorney. He did, however, place them in the attorney's hands for use in the attorney's discretion, "as needed." He cannot now complain that the attorney made an unwise choice of strategy in revealing them to the district attorney. The trial court did not err in admitting these photographs.

3. Johnson does not challenge the similarity of the acts presented in the similar transaction evidence, but he contends they should not have been admitted because they were too remote in time, citing *Gilstrap v. State*, 261 Ga. 798 (410 SE2d 423) (1991). In *Gilstrap*, the Supreme Court held that "[i]t should be clear . . . that an event 31 years in the past is too remote." Id. at 799 (1) (b).

The similar transactions here, however, were more analogous to those held admissible in *Bryson v. State*, 210 Ga. App. 642 (437 SE2d 352) (1993). *Bryson* involved similar instances of sexual offenses against children of several generations in a family. We held there that in such instances, "obviously many years are going to lapse between the acts," and such lapse of time goes only to the weight of the evidence and the credibility of the witnesses, and not its admissibility. Id. at 643-644 (2). See also *Starnes v. State*, 205 Ga. App. 882, 883-884 (1) (424 SE2d 4) (1992); *Cooper v. State*, 173 Ga. App. 254, 255-256 (1) (325 SE2d 877) (1985).

Contrary to Johnson's argument, the similar transaction evidence here clearly shows a continuous course of criminal conduct on Johnson's part involving close family members and others, focusing on children of a particular age. The fact that Johnson's conduct with the victims of the similar transactions began many years ago only illuminates in striking fashion the pattern of Johnson's deviant behavior that culminated in the crimes for which he was on trial. They were clearly admissible.

4. Johnson moved for mistrial based on the admission of the sexually oriented videotapes and magazines, which motions were denied. He does not, however, enumerate as error the rulings on those motions for mistrial. Instead, he challenges on appeal only the *admission* of those sexually oriented videotapes and magazines.

Johnson made no specific objection to their admission at trial,[3] and therefore technically did not preserve this issue for review. Nevertheless, because it is clear that Johnson took issue with the admission of these items, we address this enumeration on the merits.

These items were properly admitted. The older victim testified that he showed her pornography before molesting her. *Henson v. State*, 182 Ga. App. 617, 618 (2) (356 SE2d 556) (1987). And in cases of sexual offenses against children, our courts, almost without exception, have favored the admission of such materials to illustrate the defendant's bent of mind. See, e.g., *Caldwell v. State*, 263 Ga. 560, 564-565 (13) (436 SE2d 488) (1993).

5. The State questioned a witness about Johnson's attempt to purchase additional insurance on the life of his wife after their separation. Johnson contends the trial court erred in denying his motion for mistrial based on such questioning. The record, however, does not show such a motion was made. Johnson objected on relevancy grounds, and the State made an offer of proof, stating that the testimony tended to show an attempted obstruction of justice and implied that Johnson intended to kill his wife to prevent her from testifying. During the colloquy that ensued, the single word "mistrial" was at one point uttered by defense counsel,[4] but that does not constitute a motion. The prosecutor asked no further questions of this witness.

Although Johnson now complains that the testimony was inadmissible for additional reasons, including prejudice and failure of the State to notify him under USCR 31.1 and 31.3, these grounds were not raised below. We are limited on appeal to considering those grounds raised and ruled upon below. *Ellison v. State*, 216 Ga. App. 639, 641 (3) (455 SE2d 361) (1995).

6. In his brief, Johnson complains certain comments by the trial court conveyed to the jury the impression that the trial court intended to hurry the trial to conclusion and that, in the words of Johnson's counsel at trial, "justice would be swift." Johnson also contends the trial court erred in denying a motion for mistrial based upon the court's remarks. He argues that the trial court's remarks violated OCGA § 17-8-57 by indicating an opinion that Johnson was guilty.

This contention is patently absurd and totally unsupported by

---

[3] His objection was merely "we've already expressed our objection."

[4] Johnson objected to the testimony on relevancy grounds. A long colloquy followed at the bench, at the end of which the trial court overruled the objection. Counsel for Johnson then noted his exception for the record, and stated: "*Counsel*: [O]ne final . . . whether or not there was any implication of any attempt to kill his wife. There's no evidence concerning that. *District Attorney*: This is . . . *Counsel*: . . . mistrial. *District Attorney*: No, I don't intend to do anything of the sort. This is all that we're going to present." The bench conference then concluded.

the record. The remarks referred to by Johnson were made by the trial judge at the outset of the trial on a Monday. In discussing scheduling and procedure during trial, the judge informed the jury that he had an appointment out of town on Friday, and he would therefore keep breaks in the trial as brief as possible. He also mentioned that if the jury had not begun deliberations by Friday, it was possible they would have to return the following week. "OCGA § 17-8-57 is only violated when the court's [comment] assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. [Cit.]" *Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986). When these comments were made, the court had not as yet even heard any evidence.

7. Johnson maintains that the evidence was insufficient to convict him of the forcible rape of the older victim because although she testified that intercourse with Johnson continued after she turned 14,[5] she never testified that it was against her will.

Defense counsel moved for a directed verdict of acquittal on this count. In denying Johnson's motion, the trial court noted that the older victim "never came right out and said it, but I think the jury could infer from her demeanor and the general circumstances that it was against her will." We agree with the trial court that this victim's testimony authorized the jury to find that Johnson was guilty of forcibly raping her. It is true that the State's questioning of Johnson's biological daughter was more specific in this respect. But the older girl testified that she cried when her sister told her of Johnson's molestation because he "did the same thing to me." He began his sexual advances when she was only nine years old and began having intercourse with her when she was twelve. Nothing in her testimony indicated that their relationship became consensual when she became 14. Here, as in *Richardson v. State*, 256 Ga. 746 (353 SE2d 342) (1987), "[t]he pattern of sexual exploitation presented in this case was . . . as a matter of law, forcible and against the will, because of the step-daughter's age at onset, and because of her familial relationship with [the defendant]." Id. at 747 (2).

8. Contrary to Johnson's contention, the State did not exhaust all allegations of sexual intercourse in proving rape. Both victims testified to multiple acts of sexual intercourse with Johnson, and consequently, the counts of rape and incest did not merge. The trial court did not err in sentencing Johnson separately for those crimes. *Marcello v. State*, 220 Ga. App. 284, 285-286 (3) (469 SE2d 252) (1996).

9. Johnson alleges the trial court erred in denying his motion for new trial on the ground that his trial counsel was ineffective. He

---

[5] We note that the age under which force need not be shown was changed in 1995 to 16.

identifies several actions or inactions on the part of trial counsel that he asserts demonstrate ineffectiveness. These include counsel's failure to file a motion to suppress the evidence found in the search of his home and failure to call certain witnesses. Even assuming that these assertions are correct, however, and that trial counsel was ineffective, we find no error in the trial court's denial of the motion for new trial.

Johnson's claim was presented below and ruled on by the trial court, whose finding of effectiveness must be upheld unless clearly erroneous. *Capers v. State*, 220 Ga. App. 869, 871 (1) (a) (470 SE2d 887) (1996). To establish a claim of ineffective assistance of counsel, Johnson must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Johnson must establish both the performance and the prejudice components of the *Strickland* test. In reviewing Johnson's claim, failure to establish either component results in the denial of the Sixth Amendment claim. *Prophitt v. State*, 191 Ga. App. 5, 6 (2) (381 SE2d 83) (1989). This case need not address both components if Johnson has made an insufficient showing on one, nor must we address the components in any particular order. Id.

In this case, given the direct testimony of the victims in the charged crimes and the similar transactions alone, it is highly unlikely that the jury would have found Johnson not guilty even had counsel performed in the manner alleged by Johnson to be effective. He cannot, therefore, establish a reasonable probability that the result of the trial would have been different, and his claim must fail. See id.; *Rogers v. State*, 195 Ga. App. 446, 447-448 (2) (394 SE2d 116) (1990).

10. We do not agree with Johnson that the trial court confused the jury by mentioning statutory rape in its charge. In support of his argument for reversal, Johnson cites *Robinson v. State*, 232 Ga. 123 (205 SE2d 210) (1974).[6] In *Robinson*, the trial court charged on both statutory rape and forcible rape, permitting the jury to convict of forcible rape without being required to find that force was used. This was held to be error, but harmless under the evidence presented, which did not include an allegation of consensual sex. Id. at 128-129 (4). This case is distinguished from *Robinson*. Here, the court defined statutory rape briefly in order to distinguish it from forcible rape, with which Johnson was charged. But after distinguishing statutory

---

[6] Contrary to Johnson's assertion, the rape conviction in *Robinson* was *not* reversed.

rape, the court carefully instructed the jury that "this defendant is not charged with that crime. So I don't want you to get confused." This could not have confused the jury and was not error, harmless or otherwise.

11. Johnson contends the trial court erred in failing to grant his motion for a mistrial when during her testimony, his former wife stated that he had beaten her after he learned she had obtained the Polaroid pictures. Johnson immediately moved for a mistrial, which was denied. On appeal, Johnson contends the motion should have been granted because this constituted evidence of a similar transaction for which the State had not given him notice pursuant to USCR 31.1 and 31.3. Johnson did not object on this ground below, however, and he may not raise this ground for the first time on appeal. *Kincer v. State*, 208 Ga. App. 360 (1) (430 SE2d 597) (1993).

Johnson also contends that the testimony was prejudicial, a ground which was raised below. The grant or denial of a motion for mistrial, however, is within the discretion of the trial court. Unless it is clear that a mistrial was essential to the preservation of a fair trial, this Court will not interfere with the exercise of that discretion. *Jones v. State*, 212 Ga. App. 473, 474 (442 SE2d 20) (1994). In this case, we find no abuse of discretion. The challenged testimony was an unresponsive answer by the witness to the State's question about the pictures. Id.

Finally, given the unresponsive nature of the answer and the overwhelming evidence presented of Johnson's guilt, it is highly improbable that the testimony contributed to the verdict. Even if error, therefore, Johnson would not be entitled to a reversal on this ground. Id. at 474-475.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 11, 1996 — 

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.