## A97A1895. ROSS v. THE STATE.
(499 SE2d 642)

SMITH, Judge.

Defendant Vertis Ross was convicted by a DeKalb County jury of two counts of rape, two counts of kidnapping, two counts of aggravated sodomy, two counts of armed robbery, violation of the Georgia Controlled Substances Act, and possession of a firearm by a convicted felon. The charges arose from a crime spree in which two young women were kidnapped, repeatedly raped, sodomized, and tortured, but escaped with their lives. He appeals following the denial of his motion for new trial, raising 27 enumerations of error. We affirm.

Construed to support the jury verdict, the evidence at trial showed that at about 9:00 p.m. on July 19, 1994, two young women, N. X. and S. B., were driving out of the parking lot of a fast food restaurant in N. X.'s convertible when they were forced to a stop by Ross and Sammy Rogers. Ross and Rogers pushed their way into the vehicle, held guns to the women's heads, and demanded their money and jewelry. Ross took over control of the vehicle and drove it to Candler Park. During the drive, the victims were forced to disrobe in the car and were fondled by the men. When they reached Candler Park, S. B. was forced to orally sodomize Ross, and then both victims were raped. Next Ross drove the vehicle from Candler Park to the back of an abandoned building where he again raped S. B. Thereafter, he drove to a gas station where he purchased fuel for the car. As he left the station, Ross flashed the car lights at a blue car and pulled up beside it. When asked to identify himself to the occupant of the blue

car, Ross used the name "E." Ross left the car with N. X.'s necklace and possibly other jewelry belonging to the victims, walked to the blue car, and returned with a ziplock bag containing crack cocaine.

The victims were then taken to a vacant apartment where they were repeatedly raped, forced to perform oral sodomy, burnt with a cigarette lighter and wax from a birthday candle, hit with a shotgun, and threatened with death. Testimony also indicated that Ross and Rogers smoked crack cocaine throughout the night. Sometime the next day, Ross and Rogers released the victims who were then able to drive their vehicle to S. B.'s mother's home and call the police.

Investigator Angie Marty of the Decatur Police Department was the lead investigator in this case. She met with the victims and drove around with them to see where the events took place. She immediately thought of Ross as soon as she learned the address of the vacant apartment (Ross lived two doors down), found out that one of the perpetrators went by the name "E," and heard details from the victims about the physical description of the perpetrator called "E." Investigator Marty placed Ross's photograph in a lineup, and both victims immediately identified him. Ross also was positively identified by both victims in the courtroom at trial.

After an arrest warrant for Ross and a search warrant for his residence were obtained, officers executed the warrants and found Ross hiding in a closet in his room. Either on his person or in his room, police found N. X.'s purse, as well as S. B.'s jewelry, identification card, telephone bill, and pager. Officers also found clothing, shoes, and other personal items belonging to Ross that matched the description given by the victims of what "E" had been wearing. Ziplock bags containing cocaine residue were found in a closet in Ross's apartment. The vacant apartment where the victims had been held also was searched, and the drug paraphernalia, cigarette lighter, and birthday candle described by the victims were found there.

Based upon information obtained from Ross's sister, the police arrested Rogers and found jewelry belonging to S. B. on his person. Rogers implicated Ross as the other person involved in the crimes.

Immediately after the incident, the victims were taken to DeKalb Medical Center for a medical examination, and a "rape kit" procedure was performed on each of them. At trial, the results of DNA testing were introduced by the State to support the victims' identification of Ross. Fingerprint, fiber, and hair analyses were not introduced by the State because they failed to connect Ross to the crimes.

Rogers testified for the State at trial after pleading guilty to raping both victims. The jury was made aware of his guilty plea and the life sentences he received on both counts. Rogers's testimony corrobo-

rated that of the victims, except he denied ever having a weapon other than the shotgun in his possession. He also testified that he, Ross, Ross's sister, and a friend, Kenneth Willis, had smoked marijuana and crack cocaine throughout the evening preceding the kidnapping of N. X. and S. B. He further testified that just prior to the kidnapping, the three men had intended to rob a crack house with a sawed-off shotgun but changed their minds because there were too many people in the area.

Kenneth Willis also testified for the State. He corroborated Rogers's testimony and confirmed that the men had been smoking marijuana and crack cocaine throughout the evening preceding the kidnapping and that the three men had conspired to rob a crack house. Willis also testified that after their robbery plan was thwarted, he dropped both Ross and Rogers off near the restaurant where the victims were kidnapped. Ross told Willis he was going back to the restaurant to get the two women. Ross still had the shotgun in his possession when he got out of the car.

Ross's defense was alibi, and he called several witnesses to testify on his behalf to his whereabouts on the evening in question. He did not present any expert testimony to rebut the State's forensic evidence.

1. Ross raises thirteen different claims relating to ineffectiveness of counsel and argues that each one should be separately analyzed under both the federal and state constitutions. We first note that "[t]here exists no substantial difference in the legal standard to be employed in resolving claims of ineffective assistance of counsel under the United States Constitution and under the Georgia Constitution of 1983. Accordingly, the proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) [(1984)]. First, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different. A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous." (Citations and punctuation omitted.) *White v. State*, 216 Ga. App. 583, 584 (1) (455

SE2d 117) (1995). Keeping these principles in mind, we will now address each of Ross's specific enumerations of error relating to his claims of ineffectiveness of counsel.

Ross first argues he was denied effective assistance of counsel because trial counsel failed to obtain and use an expert in the field of DNA analysis after the trial court had granted a motion for funds for that purpose.

At trial, the GBI Crime Lab's serologist testified that she was unable to use restriction fragment length polymorphism (RFLP) technology to match any of the DNA from N. X.'s or S. B.'s "rape kit" with Ross's DNA due to insufficient DNA samples. Using polymerase chain reaction (PCR) testing, however, she had been able to find DNA that potentially could have been contributed by Ross on at least one item of clothing from each of the victims. She further testified that the frequency of Ross's blood pattern in the black population is one in one hundred. During cross-examination, the State's serologist restated that she had found no match between Ross's DNA and either victim's "rape kit" using RFLP testing. She admitted, that at the request of the State, she had not performed PCR testing on the "rape kit" samples to confirm the RFLP results even though she could have done so. Trial counsel then cross-examined the serologist about the difference in reliability between PCR testing and RFLP testing and called into question the reliability of the procedures she used to conduct the PCR tests in this case.

Ross contends that trial counsel should have called an independent expert DNA witness to testify at trial that the GBI Crime Lab's PCR testing and test results were unreliable. But Ross failed to introduce any evidence at the hearing on the motion for new trial demonstrating that an independent expert witness would have testified as he claims. "The failure of trial counsel to employ evidence cannot be deemed to be 'prejudicial' in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because appellant failed to make any proffer of the uncalled witnesses' testimony, it is impossible for [him] to show there is a reasonable probability the results of the proceedings would have been different. It cannot possibly be said that the [expert witness] would have testified favorably to appellant." (Citations and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

We also note that trial counsel testified at the hearing on the motion for new trial that Ross's first trial counsel had, in fact, retained a DNA expert in Alabama who had provided a report stating that he had nothing to add to the GBI Crime Lab's report and certainly could not disagree with it. Accordingly, Ross cannot demonstrate prejudice from trial counsel's failure to call this expert witness

to testify at trial. See, e.g., *Boone v. State*, 224 Ga. App. 563, 564 (3) (481 SE2d 569) (1997).

2. Ross argues he was denied effective assistance of counsel because trial counsel failed to present expert testimony to show that latent prints lifted from the crime scenes did not match Ross's fingerprints. The transcript indicates, however, that the jury was fully aware of the existence of this exculpatory evidence by virtue of the testimony of Investigator Marty, who admitted at trial that the GBI Crime Lab had found no matches between Ross's fingerprints and the latent prints lifted from the crime scenes. Additionally, the prosecutor acknowledged during closing argument that the fingerprint evidence against Ross was a "wash," and the lack of fingerprint evidence connecting Ross to the crimes was placed before the jury a third time during trial counsel's closing argument.

Although Ross alleges on appeal that trial counsel should have called the GBI Crime Lab's fingerprint expert to testify about the exculpatory fingerprint evidence, he has failed to show what the substance of this expert's testimony would have been. Absent such a proffer, Ross cannot show there is a reasonable probability that, but for trial counsel's failure to call this expert as a witness, the trial's result would have been different. See *Ponder v. State*, 201 Ga. App. 388, 389 (411 SE2d 119) (1991). See also *Goodwin*, supra at 615-616.

3. Ross argues that counsel was ineffective because he failed to obtain and use an expert in the field of microscopic fiber analysis to testify that none of the fibers taken from the apartment where the victims were held was found on Ross's clothing and that none of the fibers from Ross's clothing was found at the crime scene.

Once again, the record indicates that the jury was fully aware that fiber samples were taken from the victims' bodies and clothing and from the apartment where the victims were held, and that these fiber sample tests yielded no match. Trial counsel also pointed out this lack of fiber evidence to the jury in his closing argument. Absent a proffer as to what the testimony of this microscopic fiber expert would have been at trial, Ross cannot show there is a reasonable probability that, but for trial counsel's failure to call this expert as a witness, the trial's result would have been different. See *Ponder*, supra at 389; *Goodwin*, supra at 615-616.

4. Ross contends counsel was ineffective because he failed to obtain and use experts in the field of hair analysis. Again the transcript shows that the jury was fully aware that hair samples had been taken from Ross and from the victims, and that there had been no match. Further, trial counsel also argued this lack of evidence to the jury in his closing argument. As discussed in Division 3, above, absent a proffer of this expert's testimony, Ross cannot show a reasonable probability that, but for trial counsel's failure to call this

expert as a witness, the trial's result would have been different. See *Ponder*, supra at 389; *Goodwin*, supra at 615-616.

5. Ross argues he was denied effective assistance of counsel because trial counsel failed to object to argument by the State that the jury was entitled to draw adverse inferences from Ross's failure to present his own expert testimony at trial to rebut the State's scientific evidence. After the prosecutor admitted during closing argument that the State had no fingerprint, fiber, or hair matches, he then argued that Ross had an absolute right to an independent examination of every piece of scientific evidence, so that if there had been "one piece of fiber, hair, fingerprint [or] any other kind of scientific evidence that helped [trial counsel], he would have rammed that down our throat." The prosecutor never referred to a particular expert or implied that there was a particular defense expert who had not been called to the stand and equally could have been referring to Ross's right to subpoena the State's own expert witnesses from the GBI Crime Lab. Contrary to Ross's assertions, therefore, we find the State's argument was a permissible comment on the defense's failure to rebut the State's scientific evidence, not a reference to Ross's failure to call his own expert witnesses. See, e.g., *Blige v. State*, 263 Ga. 244 (1) (430 SE2d 761) (1993). We also find no reasonable probability that, but for trial counsel's failure to object to this argument, the result of the proceeding would have been any different. See, e.g., *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996).

6. Ross argues that trial counsel was ineffective in failing to impeach Rogers and Willis with certified copies of their felony convictions for crimes of moral turpitude.

At trial, Rogers admitted that he had fully participated in all of the heinous crimes for which Ross was on trial, including his use of crack cocaine prior to and during the incident and his participation in the conspiracy to rob a crack house. During Willis's testimony at trial, he also admitted that he had smoked marijuana and crack cocaine throughout the evening preceding the kidnapping, that he had participated in the conspiracy to rob the crack house, and that he was on parole at the time of the commission of the crimes and at trial. Although we agree that trial counsel could have further impeached these witnesses with certified copies of their felony convictions, any such deficiency in counsel's performance could not have prejudiced Ross because the jury was already fully aware of the disreputable character of these witnesses by virtue of their own testimony on the stand. Accordingly, no reasonable probability exists that, but for this error on trial counsel's part, the result of the proceeding would have been any different. See *Johnson*, supra at 728.

7. Ross argues that trial counsel harmed him and was ineffective by eliciting testimony from Investigator Marty relating to Ross's

refusal to give a statement to the police when he was arrested. Although the transcript confirms that trial counsel did ask Investigator Marty whether Ross refused to make a statement at the time of his arrest, trial counsel testified at the hearing on the motion for new trial that this line of questioning was pursued as part of his strategy of showing that there was a history of "bad blood" between Investigator Marty and Ross, resulting in the police officers displaying bias against him. Trial counsel also used Investigator Marty's testimony to show that she had lied to Rogers when she told him that Ross had told his side of the story and that Rogers now needed to tell his side. Under the circumstances in this case, and relying on the strong presumption that counsel's performance was a matter of strategy and tactics, we hold that trial counsel's performance was not ineffective. "The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel. [Cit.]" *Stewart v. State*, 263 Ga. 843, 847 (440 SE2d 452) (1994). This is true even if trial counsel's tactics or strategy may have been unwise. *Luallen v. State*, 266 Ga. 174, 177 (3) (b) (465 SE2d 672) (1996).

8. Ross maintains he was denied effective assistance of counsel when trial counsel elicited testimony from Investigator Marty that she had previously arrested Ross following a fight in which he might have been the victim. As discussed in Division 7, this line of questioning was pursued by trial counsel to show Investigator Marty's bias against Ross and was, therefore, a matter of trial tactics and strategy. Accordingly, trial counsel's performance was not ineffective. *Stewart*, supra at 847.

9. Ross asserts ineffectiveness in trial counsel's failure to object to Rogers's testimony that Ross smoked marijuana, drank beer, and smoked crack cocaine during the evening preceding the kidnapping. Ross contends this testimony was inadmissible evidence of bad character and "other crimes," and it should not have been admitted absent the State's compliance with the notice provisions of USCR 31.3 (E). We disagree. This evidence was " 'relevant evidence of (appellant's) state of mind and admissible as part of the res gestae.' [Cit.]" *Johnson v. State*, 264 Ga. 456, 458 (3) (448 SE2d 177) (1994). Trial counsel was therefore not ineffective for failing to object to this testimony.

10. Ross argues he was denied effective assistance of counsel when trial counsel failed to object to Willis's testimony that Ross smoked crack cocaine during the evening preceding the incident; that Ross conspired to rob a crack house; and that Ross was in possession of a sawed-off shotgun the evening in question. Ross contends this testimony, too, was "other crimes" evidence that should not have

been admitted absent the State's compliance with the notice provisions of USCR 31.3 (E). We disagree. As discussed in Division 9, this testimony pertaining to the acts and circumstances leading up to the kidnapping of N. X. and S. B. was admissible as res gestae evidence. See *Johnson v. State*, supra, 264 Ga. at 458 (2). Trial counsel was not ineffective for failing to object.

11. Ross asserts counsel was ineffective when he refused to allow him to testify at trial. But trial counsel vehemently denied this allegation and testified at the hearing on the motion for new trial that he explained to Ross in great detail the advantages and disadvantages of testifying and that Ross made the ultimate decision as to testifying. Apparently, the trial court found that trial counsel's testimony on this issue was more credible, and this finding was not clearly erroneous. "It is the province of the trial court to weigh the credibility of the witnesses and unless clearly erroneous, its findings of fact will be upheld on appeal. [Cit.]" *Lawrence v. State*, 227 Ga. App. 70, 73 (487 SE2d 608) (1997); *Parker v. State*, 226 Ga. App. 462, 466 (8) (a) (486 SE2d 687) (1997).

12. Ross alleges ineffectiveness in trial counsel's failure to object to argument to the jury that Ross would not suffer the full penalty imposed by the court because of pardon, parole, or clemency. Contrary to Ross's assertions in his brief, the record shows that the prosecutor was not referring to Ross's sentence when he made this argument to the jury but to Rogers and his plea bargain arrangement with the State. There was no violation of OCGA § 17-8-76 (a). Our review of the record further shows that Ross's arguments concerning other allegedly improper references to the words "parole" and "probation" also are without merit. Therefore, trial counsel was not ineffective for failing to object to any of these allegedly improper statements.

13. Ross argues that trial counsel's performance was so poor that this Court should abandon the *Strickland v. Washington* test set forth above and instead find that trial counsel's ineffectiveness in this case was "so pervasive that a particularized inquiry into prejudice would be unguided speculation." (Citation and punctuation omitted.) *Ross v. Kemp*, 260 Ga. 312, 315 (393 SE2d 244) (1990). See also *Cochran v. State*, 262 Ga. 106, 108 (2) (b) (414 SE2d 211) (1992).

We disagree and find that this is not an egregious case involving a counsel's "total failure of trial preparation," as contemplated by *Cochran*, supra at 107-108 (2). First, as discussed in Divisions 1 through 12, we have found each of Ross's specific allegations of ineffectiveness to be without merit. Second, the record indicates that trial counsel was an experienced criminal defense lawyer who was adequately prepared to try Ross's case, having met with him in jail approximately six times prior to trial, having spoken to him fre-

quently on the telephone, and having kept him fully apprised of developments in his case. Third, the record shows that trial counsel reviewed Ross's prior trial counsel's notes, interviewed witnesses for both the State and the defense, and called three witnesses to the stand to support Ross's alibi defense. Accordingly, we reject Ross's argument that the two-prong test set forth in *Strickland v. Washington*, supra, should be abandoned in this case and affirm the trial court's ruling that Ross was afforded effective assistance of counsel at trial. See, e.g., *Hand v. State*, 205 Ga. App. 467, 470 (2) (422 SE2d 316) (1992); *Manus v. State*, 180 Ga. App. 658, 660-661 (350 SE2d 41) (1986) (Beasley, J., concurring specially).

14. Ross argues the trial court erred in failing to conduct an evidentiary hearing meeting the requirements of *Harper v. State*, 249 Ga. 519, 524-526 (1) (292 SE2d 389) (1982) to determine the admissibility of the State's DNA evidence.

Our review of the record shows that an evidentiary hearing specifically to determine this question was held by the trial court prior to its decision to allow into evidence DNA test results. At the hearing, a forensic serologist testified at great length about the PCR technique of DNA testing and the testing procedures used in this case. The testimony elicited at this hearing was sufficient to support the trial court's determination that DNA testing procedures used by the State's serologist were performed in an acceptable manner and were capable of producing reliable results. See *Johnson*, supra, 264 Ga. at 458 (5); *Redding v. State*, 219 Ga. App. 182, 186 (4) (464 SE2d 824) (1995). The trial court did not err in admitting this evidence.

We also note that at no time during this hearing did defense counsel raise the objection now being raised on appeal. To the contrary, defense counsel affirmatively stipulated to the State's proposal regarding the format and content of the evidentiary hearing on the DNA evidence. " 'A litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. Acquiescence deprives him of the right to complain further. . . . (Cit.)' [Cit.]" *Emerson v. State*, 220 Ga. App. 485, 486 (1) (469 SE2d 520) (1996). Although defense counsel did object to the admissibility of the DNA evidence on other grounds, "[a]n objection on a specific ground or grounds at trial waives any objection to that evidence on other grounds on appeal. Accordingly, all other grounds for objection, other than the specific grounds posed at trial, are not preserved for appeal." (Citation and punctuation omitted.) *Thomas v. State*, 225 Ga. App. 790 (484 SE2d 797) (1997).

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 26, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998

*Potts & Badaruddin, Shandor S. Badaruddin*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, John H. Petrey, Assistant District Attorneys*, for appellee.