**FOURTH DIVISION
DOYLE, P. J.,
ANDREWS and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**July 2, 2012**

# In the Court of Appeals of Georgia

A12A0381. ASHMID v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Lakerim Ashmid was convicted on one count of child molestation. He appeals this conviction, contending that (1) the trial court erred by allowing the victim to refresh her recollection, (2) a potential juror was improperly struck for cause, and (3) that he received ineffective assistance of counsel when his trial counsel failed to obtain criminal histories on state witnesses or make proper objections in three specific instances. For the reasons set forth *infra*, we affirm Ashmid's conviction.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that Ashmid, who is from New York, was staying at the home of his cousin,

---

[1] *See, e.g.*, *DeLong v. State*, 310 Ga. App. 518, 518 (714 SE2d 98) (2011).

his cousin's girlfriend, and their child, J. S., in September of 2005. J. S. was three years old at the time and, because her parents worked different shifts, there was a brief period of time during the day in which neither parent was home to care for the child. Thus, during the three- to four-week period in which Ashmid stayed with the family, he watched J. S. daily from approximately 4 p.m. until 5 p.m.

On one such evening, J. S.'s mother returned home to find J. S. with her underwear on backwards, and the child told her almost immediately that Lako (Ashmid's nickname) had "hurt her pee-pee." The mother took J. S. upstairs to make further inquiry in private, and J. S. repeated her assertion countless times. Once upstairs, and at her mother's request, J. S. demonstrated how she had been hurt, pulling down her underwear and rubbing her genitals in a circular fashion, which she had never done before. Additionally, J. S.'s mother observed that the vaginal area was red, whereas there had been nothing unusual about the area during J. S.'s earlier bath time.

The mother tried to keep J. S. upstairs but the child ran back downstairs, and the mother heard J. S. confront Ashmid by telling him that she had told her mother he had hurt her pee-pee and that he would not do it again. At this same time, the mother's cousin arrived at the house on a previously scheduled errand. When the

2

cousin arrived, J. S. immediately told her that Lako had "hurt her pee-pee," and the cousin also heard J. S. confront Ashmid. The cousin then returned J. S. upstairs to her mother and J. S. was again asked to demonstrate what Ashmid had done, to which she once more manipulated her genitals with her hand. Like J. S.'s mother, the cousin observed that the vaginal area was "red and raw."

J. S.'s father returned home from work a short time later, having been informed of the situation by the mother, and he promptly confronted Ashmid, who denied the accusations. When the father asked J. S. what Ashmid had done, J. S. again rubbed her genitals in a circular fashion. J. S.'s father became very upset at that point, and Ashmid ran from the home.

Later that evening, J. S. was examined by a sexual assault nurse, to whom she indicated that her genitals had been touched. And because J. S. was uncomfortable at that time, only a limited examination was conducted, which revealed that J. S.'s vaginal area was swollen and red.[2] Additionally, during the ensuing investigation, J. S. was interviewed by law enforcement officers and told them that she was touched

---

[2] A more extensive exam was performed the following day by another nurse, but she observed no acute trauma or swelling.

3

on her genitals and made circular motions with her finger on an anatomical diagram on which she had previously identified body parts.

On the evening of the incident in question, Ashmid was eventually located by law enforcement, interviewed, and released. After a review of the evidence, a warrant was issued for Ashmid's arrest and Ashmid was extradited from New York, where he had returned after his interview and release. A jury convicted Ashmid on one count of child molestation.[3] This appeal follows.

At the outset, we note that on appeal of Ashmid's criminal conviction, "we view the evidence in the light most favorable to the jury's verdict, and [Ashmid] no longer enjoys a presumption of innocence."[4] And we neither "weigh the evidence nor assess witness credibility, which are tasks that fall within the exclusive province of the jury."[5] With these guiding principles in mind, we turn now to Ashmid's enumerations of error.

---

[3] *See* OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person[ ] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . .").

[4] *DeLong*, 310 Ga. App. at 519-20.

[5] *Id.* at 520 (punctuation omitted).

1. First, Ashmid contends that the trial court improperly allowed the State to refresh the victim's recollection with an anatomical picture of a naked female child after J. S. repeatedly answered that Ashmid hurt her on the leg, the arm, and nowhere else. We disagree that the trial court so erred.

Although Ashmid asserts that the State improperly refreshed J. S.'s memory,[6] over objection, by asking the child to identify various body parts before again asking where Ashmid hurt her—resulting in a reply that Ashmid had hurt her "pee-pee"—the record reflects that the diagram was used not to refresh the child's memory but as demonstrative evidence.[7] The State questioned J. S. regarding where on her body Ashmid had hurt her, and J. S. indeed repeatedly responded that she had been hurt on her leg and arm and that Ashmid did not touch her anywhere else.

A bench conference ensued at the request of Ashmid's counsel after the State showed him a diagram of what he described as "a naked body that has a very

---

[6] *See* OCGA § 24-9-69 ("A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper.").

[7] *See Pittman v. State*, 178 Ga. App. 693, 693-94 (2) (344 SE2d 511) (1986) (holding that trial court did not abuse its discretion by admitting into evidence diagram on which child, at trial, indicated which body parts were involved in act of molestation).

5

pronounced vaginal area that [the State] was going to take to the child." The State responded as follows: "What [J. S.] refers to as a knee or a leg, as she said, if that's the case, then . . . I'm going up there with this knowing what she said and . . . trying to get it out to the jury. She may very well point to the leg. It's a picture of the whole body. There's nothing pronounced on it."

The court decided that the State would be permitted to present the child with an unmarked copy[8] and that Ashmid could use the document on cross examination, determining that Ashmid's arguments were "more with regard to credibility of the child than they are to admissibility of what the State was trying to do." Thereafter, the State showed J. S. the picture and asked her to identify the body parts by name, the last being identified as the "pee-pee." The State also asked J. S. to use a pen to point to where Ashmid hurt her, which J. S. did, again identifying "the pee-pee." J. S. was then asked what Ashmid used "to hurt your pee-pee" and she responded that he had used his hand and then pointed to the hand on the diagram. The diagram was admitted into evidence over Ashmid's objection.

---

[8] The diagram was identical to that used by law enforcement during J. S.'s interview, during which she identified body parts by name, and the marked version was tendered into evidence later.

Despite Ashmid's contention that this incident amounted to an improper instance of refreshing a witness's recollection, it is clear from the record that the diagram was instead used as relevant demonstrative evidence.[9] And "[a]ny evidence is relevant which logically tends to prove or disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant."[10] Additionally, "the trial court has wide discretion in determining relevancy and materiality, and furthermore, where the relevancy or competency is doubtful, the evidence should be admitted, and its weight left to the determination of the jury."[11] Because J. S. was four years old when she testified at trial, her ability to properly identify body parts and indicate which parts were involved in the alleged molestation would be relevant to the jury's

---

[9] *See Pittman*, 178 Ga. App. at 693 (2).

[10] *Id.* (punctuation omitted).

[11] *Id.* (punctuation omitted).

7

determination of Ashmid's guilty.[12] Accordingly, the trial court did not abuse its discretion.

2. Next, Ashmid contends that the trial court improperly struck a potential juror for cause after he responded that he would require forensic evidence to convict in a case of child molestation. Ashmid argues that "[r]equiring proof is not bias for the purpose of striking for cause," and that the potential juror did not express bias toward either side, instead indicating that he could be fair and impartial. We disagree that the court erred in striking the potential juror.

As we have previously held, "it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed."[13] And a potential juror must be excused for cause

---

[12] *Id.* at 693-94 ("[Because] the evidence tending to show whether appellant sought to have the victim place any part of her body in contact with his was relevant to a determination whether appellant was guilty of child molestation, the trial court did not abuse its discretion in allowing the diagram as tendered into evidence."); *see also Jackson v. State*, 251 Ga. App. 171, 172 (554 SE2d 202) (2001) (victim indicated on a diagram at trial where defendant had touched her vaginal area); *Siharath v. State*, 246 Ga. App. 736, 737 (541 SE2d 71) (2000) (victim indicated on a diagram at trial where defendant had touched her and the body parts he used to touch her).

[13] *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 475 (1) (722 SE2d 84) (2011) (punctuation omitted); *see also* OCGA § 15-12-134.

"if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case on the evidence and the court's charge on the evidence."[14] When a challenge has been made, "the trial court has a duty to hear the competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness."[15] And when bias is shown, "the trial court must do more than rehabilitate the juror through the use of any talismanic question" because the court "is statutorily bound to conduct voir dire adequate to the situation . . . ."[16] Additionally, "trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience."[17] In this regard, "a trial court may only be reversed upon a finding of manifest abuse of that discretion."[18]

---

[14] *Wood v. B & S Enters., Inc.*, 314 Ga. App. 128, 133 (4) (723 SE2d 443) (2012).

[15] *Harper*, 313 Ga. App. at 475 (1) (punctuation omitted).

[16] *Bennett v. Mullally*, 263 Ga. App. 215, 217-18 (1) (587 SE2d 385) (2003) (physical precedent only) (punctuation omitted).

[17] *Wood*, 314 Ga. App. at 133 (4) (punctuation omitted).

[18] *Id.* (punctuation omitted); *see also Harper*, 313 Ga. App. at 475 (1) ("[B]ecause trial courts are vested with broad discretion in evaluating and ruling upon a potential juror's impartiality, we will only reverse when there has been a 'manifest abuse' of the trial court's discretion.").

In the case *sub judice*, Ashmid takes issue with the court's decision to strike a potential juror who, through his responses to questions asked of the panel as a whole, expressed that he was not completely impartial between the State and Ashmid; he could not put aside personal beliefs that differed from the law; and that either he or someone he knew had previously had a bad experience with law enforcement, a bad experience with the judicial system, and been accused of committing a serious criminal offense and treated unfairly by the justice system.

During individual questioning, the potential juror indicated that the younger the child, the harder it would be for him to believe the testimony to convict; that he would need hard evidence to convict with a three-year-old victim; that he would need forensic evidence before convicting someone of a crime; that he believed the court system was easily manipulated by politics; and that he probably could not be impartial between the State and defendant without forensic evidence. Then the potential juror also responded that he was capable of listening to and observing the evidence to make an assessment before voting.

Upon further inquiry, when asked specifically about the indication that he was biased, the potential juror responded, "Well, I just feel that a lot of times, you know, with the prosecution or, you know, the State, there's a lot of politics involved, and I

10

just don't feel that all the time justice is always done." And with regard to his need for forensic evidence, he then responded that "in a situation with something this serious, I would need to see something completely hard core and completely hard evidence." He then said that he did not have any prejudice against the State but that he did not feel that, given his background and beliefs, he could be completely impartial. However, he then responded that he would be fair to both sides based on the evidence presented. The State moved to strike the potential juror for cause and the trial court granted the motion because it found "his answers to be very unclear."

Although Ashmid argues on appeal that the trial court improperly struck the potential juror for cause, we disagree and reiterate that a trial judge "is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury."[19] Additionally, the determination of impartiality, "in which demeanor plays such an important part, is particularly within the province of the trial court, and absent a manifest abuse of this discretion, we cannot require a new trial."[20]As we have previously held, "a trial judge should err on

[19] *Harper*, 313 Ga. App. at 475-76 (1) (punctuation omitted).

[20] *Ivey v. State*, 258 Ga. App. 587, 594 (2) (574 SE2d 663) (2002).

11

the side of caution by dismissing, rather than trying to rehabilitate, biased jurors."[21] Here, the relevant potential juror gave conflicting and confusing answers to questions regarding his ability to be impartial, indicating more than once that he could not be, and we cannot say that the trial court manifestly abused its discretion in dismissing this potential juror.[22]

3. Finally, Ashmid argues that his trial counsel rendered ineffective assistance by (1) failing to obtain criminal histories for the State's witnesses, (2) failing to object to impermissible testimony, (3) failing to properly object in the instance discussed in Division 1, *supra*, and (4) failing to properly object to J. S.'s removal from the courtroom to sit with an assistant district attorney during a bench conference. Each contention, which we will address in turn, is without merit.

At the outset, we note that "the proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced

---

[21] *Mulvey v. State*, 250 Ga. App. 345, 348 (3) (551 SE2d 761) (2001).

[22] *See Mulvey*, 250 Ga. App. at 348 (3) ("The juror's testimony that she was biased in favor of one of the parties on account of her personal experiences justified a challenge for cause. The trial court did not abuse its discretion in doing so." (citations omitted)).

in *Strickland v. Washington*."[23] In this regard, "[f]irst, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance."[24] And "[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy."[25] With the second prong, "the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different."[26] Finally, the trial court's finding that the defendant was afforded effective assistance

---

[23] *Ross v. State*, 231 Ga. App. 793, 795 (1) (499 SE2d 642) (1998) (citation omitted); *see also Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[24] *Ross*, 231 Ga. App. at 795 (1).

[25] *Id.* (punctuation omitted); *see also Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004) ("There is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time." (footnotes omitted)).

[26] *Ross*, 231 Ga. App. at 795 (1) (punctuation omitted).

13

of counsel "must be upheld unless clearly erroneous."[27] With these guiding principles in mind, we will address Ashmid's specific contentions.

(a) First, Ashmid argues that his trial counsel was ineffective in failing to obtain criminal histories on the State's witnesses prior to trial.

The record reflects that trial counsel requested by motion that the State furnish the defense with criminal histories for the State's witnesses. But because the State was not required to furnish the defense with such information, the motion was denied.[28] Ashmid now contends on appeal that because his trial counsel neither

---

[27] *Id.* (punctuation omitted); *see also Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996) ("Our standard of review of a trial court's determination with respect to effectiveness of counsel is whether its findings are clearly erroneous.").

[28] *See* OCGA § 17-16-8 (a) ("The prosecuting attorney, not later than ten days before trial, and the defendant's attorney, within ten days after compliance by the prosecuting attorney but no later than five days prior to trial, or as otherwise ordered by the court, shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify."); *see also State v. Dickerson*, 273 Ga. 408, 410 (1) (542 SE2d 487) (2001).

14

sought the information himself pursuant to OCGA § 35-3-34[29] nor sought a continuance (resulting in waiver of the issue[30]), his trial counsel was ineffective.

Even if Ashmid's trial counsel was ineffective in either regard, Ashmid has failed to satisfy the second prong of *Strickland* in that there has been no showing in the record that any State witness even had a criminal history to discover.[31] Thus, because Ashmid has not shown prejudice, this enumeration is without merit.[32]

(b) Ashmid contends that his trial counsel rendered ineffective assistance by failing to object when J. S.'s mother's cousin testified regarding the confrontation

---

[29] OCGA § 35-3-34 (a) (2) provides that the Georgia Bureau of Investigation shall be authorized to "[m]ake criminal history records of the defendant or witnesses in a criminal action available to counsel for the defendant upon receipt of a written request from the defendant's counsel" under certain conditions.

[30] *See Dickerson*, 273 Ga. at 411 (2) ("Had [the defendant] requested and obtained a continuance until such time as he received a response from the GCIC [after the State failed to timely provide reciprocal discovery], any potential prejudice could have been cured. Under the circumstances, . . . [the defendant] waived the right to assert error on appeal by his failure to seek a continuance.").

[31] *See Wilson v. State*, 291 Ga. App. 69, 74 (4) (a) (661 SE2d 221) (2008) ("Absent a proffer of the necessary evidence, [the defendant] has not demonstrated how counsel's failure to except to the ruling prejudiced the outcome of the trial. Thus, this claim of ineffective assistance fails." (footnote omitted)).

[32] *Id.*; *see also Brown v. State*, 293 Ga. App. 633, 637 (1) (d) (i) (667 SE2d 899) (2008) (holding that defendant failed to establish prejudice resulting from counsel's failure to object to an allegedly improper statement).

15

between J. S.'s father and Ashmid, which she listened to from the other side of a door. Ashmid contends that this evidence did not qualify under the child hearsay exception[33] and was offered in violation of Georgia's eavesdropping law.[34] But this enumeration of error is also without merit.

At the motion-for-new-trial hearing, Ashmid's trial counsel testified that he did not view the testimony as particularly prejudicial based on the trial strategy, which was that Ashmid did not molest J. S. and had repeatedly denied doing so. Thus, no objection was made because the theory was that "Ashmid didn't do it, and that's why we allowed most things that he said to come in without objection, because he repeatedly held to the fact that he didn't do it."

---

[33] *See* OCGA § 24-3-16 ("A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.").

[34] *See* OCGA § 16-11-62 (1) ("It shall be unlawful for [a]ny person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place . . . ."); OCGA § 16-11-67 ("No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part.").

As previously noted, "[t]here is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time."[35] Additionally, Ashmid cannot prove "that there is a reasonable probability that the trial result would have been different if not for the deficient performance."[36] The testimony of the mother's cousin was cumulative of the testimony by J. S.'s father, who was a participant in the relevant conversation, and "[t]he failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel."[37]

(c) Ashmid further contends that his trial counsel was ineffective for failing to provide a "proper specific objection" to the situation discussed in Division 1,

---

[35] *Welbon*, 278 Ga. at 313 (2); *see also Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008) ("The decision of whether to interpose certain objections is a matter of trial strategy and tactics. Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (footnote and punctuation omitted)).

[36] *Breedlove v. State*, No. S12A0885, 2012 WL 2218744, at *2 (3) (Ga. June 18, 2012) (punctuation omitted).

[37] *Henry v. State*, No. A12A0686, 2012 WL 2044409, at *2 (2) (Ga. App. June 7, 2012).

*supra*—specifically, by failing to object on the grounds that it amounted to an improper refreshing of the witness's recollection. But because we have determined that the trial court properly allowed the questioning and admitted the diagram as relevant demonstrative evidence, this enumeration of error is without merit.[38]

(d) Finally, Ashmid argues that his trial counsel rendered ineffective assistance by failing to properly object to J. S. sitting outside the courtroom with an assistant district attorney while the trial court conducted the bench conference that ensued during the events discussed in Division 1, *supra*.

The record reflects that after Ashmid's counsel requested a bench conference, the trial court asked that J. S. be removed from the courtroom during the conversation. But Ashmid's counsel objected to sending the child outside with the assistant district attorney out of concern that the child would be coached. Ultimately, the issue was resolved by sending J. S. outside of the courtroom with the assistant district attorney and a bailiff, who could report to the court whether any conversation occurred regarding testimony. Upon return, no such report was made to the court. But on appeal, Ashmid contends that his counsel "should have objected to any further

---

[38] *See Matiatos v. State*, 301 Ga. App. 573, 575-76 (2) (a) (688 SE2d 385) (2009) ("The failure to make a fruitless objection does not constitute ineffective assistance of counsel.").

testimony after the child said that the defendant did not hurt her anywhere other than the leg and the arm."

It is somewhat unclear whether Ashmid takes issue with the failure to make an "asked and answered" objection, with the procedure of allowing J. S. to sit outside with the assistant district attorney and bailiff, or both. Nevertheless, we discern no ineffective assistance of counsel. First, when questioned about why he did not make an "asked and answered" objection, Ashmid's trial counsel testified that he thought that a bench conference was the better course of action at that point. We once more reiterate that "[t]here is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time."[39] Additionally, as to J. S. sitting outside the courtroom with an assistant district attorney and bailiff, there being no indication in

---

[39] *Welbon*, 278 Ga. at 313 (2); *see also Gray*, 291 Ga. App. at 579 (2) ("The decision of whether to interpose certain objections is a matter of trial strategy and tactics. Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (footnote and punctuation omitted)).

the record that J. S. was coached during that period, Ashmid cannot show that he was harmed by any failure to object to this procedure.[40]

Accordingly, for all the foregoing reasons, we affirm Ashmid's conviction.

*Judgment affirmed. Doyle, P.J., and Andrews, J., concur.*

---

[40] *See Wilson*, 291 Ga. App. at 74 (4) (a) ("Absent a proffer of the necessary evidence, [the defendant] has not demonstrated how counsel's failure to except to the ruling prejudiced the outcome of the trial. Thus, this claim of ineffective assistance fails." (footnote omitted)).