A05A1812. ELLIOTT et al. v. HOME DEPOT U.S.A., INC.

(622 SE2d 77)

PHIPPS, Judge.

Rachel and George Elliott sued Home Depot U.S.A., Inc. for negligence after Rachel Elliott was allegedly injured while shopping at a Home Depot store. The jury found in favor of Home Depot, and the Elliotts appeal. They contend that the trial court erred by improperly rehabilitating and failing to strike for cause seven jurors who had indicated that they would be prejudiced against Rachel Elliott because she had been diagnosed with degenerative disk disease before the Home Depot incident. Finding no error, we affirm.

During voir dire, plaintiffs' counsel asked the jury panel, "Are there any of you who have a prejudice that would prejudge Rachel Elliott if she has been diagnosed by any doctor with degenerative disk disease or degenerative disk condition prior to the Home Depot injury . . . ?" Nine jurors raised their hands. Later, defense counsel asked the panel whether there was anyone who, for any reason, could not render a fair and impartial verdict. No hands were raised.

When the lawyers finished questioning the panel, the court asked plaintiffs' counsel, "Who are you challenging for cause?" Counsel replied, "The ones that responded that they would be prejudiced against Rachel Elliott because she had had degenerative disk disease." The court then called those nine jurors back and made the following statement:

> . . . Ladies and gentlemen, we want to do some follow-up questioning with regard to your response to one or a couple of questions, those having to do with — I believe the way it was worded was prejudiced against Ms. Elliott because of degenerative disk disease or prior back injury.
>
> . . . [W]e also had a question that was asked by the Defendant, is there anyone who feels that they cannot render a fair and impartial verdict. . . . [S]ome might think that answering one and not the other would be inconsistent. So, I want to do a little follow-up questioning with you.
>
> First of all, with regard to prejudice against a party, I'm not sure how you may have taken this. So, I just want to ask, if it is shown that the Plaintiff had any kind of preexisting injury or preexisting degenerative disk disease, would that keep you from — that fact alone, regardless of any other evidence, would that keep you from rendering a fair and impartial verdict, because you don't know what the rest of the evidence is? I mean, would that overcome any other evidence that you might hear . . . ?

Juror 6 raised his hand and explained, "[I]t would be in the back of my mind through the whole thing, through the whole ordeal, I think." The court responded,

> [Y]ou obviously haven't heard any evidence yet. And really the purpose of the voir dire is to find out where — you know, where you stand without having heard any evidence if there's something that's so strong that the evidence is not going to matter, that you are not going to be able to set that aside to render a verdict.

Juror 4 raised her hand and stated, "I think it would always be in the back of my mind as well." The court continued, "Remember, I'm not asking you if it's going to be on your mind. Will it keep you from being fair and impartial? I mean, I'm not quibbling words with you. I want to make sure that you understand the question." Juror 4 responded that knowing Rachel Elliott had a preexisting injury *would* prevent her from being fair and impartial, and Juror 6 stated that he would expect the Elliotts to be "a little more aggressive" and show that Rachel Elliott had suffered "an additional injury to her existing injury."

The court responded,

> I will charge you on the law about what the standard of recovery is when there's a preexisting injury. So, you would have that. You would not only have the evidence, but you would have my charge, my instructions of the law and what you do in case — if you were to find that there were a preexisting injury or degenerative disk disease.

The court then asked "Anybody else?" When no other hands were raised, the court excused the jurors from the courtroom. Plaintiffs' counsel did not ask to question the jurors himself.

After the jurors were excused, plaintiffs' counsel argued that no juror would admit to an inability to be fair and that, "at a minimum," Jurors 4 and 6 should be struck for cause. The court struck Jurors 4 and 6, but not the others.

1. Home Depot argues that the Elliotts waived any appellate challenge to the impaneling of the seven jurors in question by not moving to strike them for cause. The record shows otherwise. Plaintiffs' counsel named the nine jurors who had indicated a prejudice, and the court summoned them for further inquiry. After the inquiry, counsel argued that they should all be struck because no juror would admit to an inability to be fair. Although counsel stated that the court should exclude, "at a minimum," the two who *had* spoken up, it is

clear from the trial transcript that counsel did not withdraw his objection to the seven jurors who had remained silent. We find no waiver.[1]

2. The Elliotts argue that the court improperly attempted to rehabilitate the remaining seven jurors. According to the Elliotts, the court should have struck those jurors because they had admitted that they would have a bias against Rachel Elliott if the evidence showed that she had had preexisting degenerative disk disease.

"The law presumes that potential jurors are impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified."[2] "[A] prospective juror's doubt about his or her own impartiality does not demand as a matter of law that he or she be excused for cause."[3] A potential juror must be excused for cause based on partiality, however, if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case based on the evidence and the court's charge on the evidence.[4]

When a party challenges a juror for cause, the court

> cannot rehabilitate a biased juror simply by asking a talismanic question, such as whether the juror can set aside his personal feelings and decide the case based solely on the evidence and the law. In other words, a court may not cut off inquiry and rely solely on an affirmative answer to a rehabilitative question from the bench . . . to show that the juror has magically, suddenly become unbiased and impartial. Nor may counsel or the trial court browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions. The court must instead conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and impartiality.[5]

Trial courts have "extremely broad discretion" to decide whether to exclude a juror for cause once an adequate inquiry has been conducted.[6] "A conclusion on an issue of bias is based on findings of

---

[1] Compare *Phillips v. State*, 275 Ga. 595, 596 (2) (571 SE2d 361) (2002) (party waived claim that court erred by failing to strike juror for cause, where party did not move to strike juror during voir dire).

[2] *Hollis v. State*, 269 Ga. App. 159 (1) (603 SE2d 516) (2004).

[3] *Doss v. State*, 264 Ga. App. 205, 211 (4) (f) (590 SE2d 208) (2003).

[4] *Hollis*, supra.

[5] *Remillard v. Longstreet Clinic*, 267 Ga. App. 230, 231 (599 SE2d 198) (2004) (punctuation and footnotes omitted).

[6] *Kim v. Walls*, 275 Ga. 177, 179 (563 SE2d 847) (2002).

demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference."[7]

The trial court called back into the courtroom the nine jurors who had indicated a prejudice related to preexisting conditions.[8] The court then attempted to clarify the nature of the "prejudice" by asking whether evidence showing that Rachel Elliott had a preexisting injury would overcome other evidence that the jurors might hear and prevent them from being fair and impartial. Two jurors raised their hands, and both were later struck for cause. The remaining seven jurors did not raise their hands, even though the court gave them ample opportunity to do so. In the absence of any evidence that those seven jurors' opinions about preexisting injuries were so fixed and definite that the jurors could not be fair and impartial, the court did not abuse its discretion in failing to excuse them for cause.

The Elliotts cite our decision in *Walls v. Kim*,[9] claiming that the court improperly attempted to rehabilitate the seven jurors. We disagree. In *Walls v. Kim*, a medical malpractice case, a prospective juror who was a nurse stated that she knew the defendant doctor, had worked with him before, and hoped the case would come out in his favor. "The judge then asked the 'rehabilitation' question, to which the juror replied that she would set aside her preconceived notions and decide the case on the law and evidence."[10] But the juror later reiterated that the plaintiff "did not start the case on an even footing with [the defendant]."[11] When plaintiff's counsel tried to question the juror further, the judge "cut him off and ordered him to move on to another question."[12] We held that judges should not rely upon a favorable response to the "rehabilitation" question as a talisman to justify retaining a biased juror.[13] In affirming our decision, the Supreme Court held that judges must not curtail voir dire questioning intended to ferret out bias.[14]

*Walls v. Kim* did not forbid all inquiry into the extent and degree of fixedness of a juror's stated bias. In this case, the court asked questions designed to determine whether the jurors' opinions on

[7] *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998) (citation omitted).

[8] We note that these nine jurors did not express a bias for or against either of the parties; rather, they indicated that they held an unfavorable opinion about preexisting injuries. A juror who indicates a willingness to try to be objective and whose reservations relate to an issue in the case rather than to a party may be eligible for service. See *Reddick v. State*, 264 Ga. App. 487, 496 (5) (a) (591 SE2d 392) (2003).

[9] 250 Ga. App. 259 (549 SE2d 797) (2001), aff'd, *Kim v. Walls*, supra, 275 Ga. 177.

[10] Id. at 260.

[11] Id.

[12] Id. at 260-261.

[13] Id. at 259.

[14] *Kim v. Walls*, 275 Ga. at 179.

preexisting conditions were so strong as to prevent the jurors from being impartial. The court did not rely on the sort of lengthy, coercive rehabilitation questions that we have condemned. Nor did the court cut off inquiry into the nature of the jurors' prejudices. Although the Elliotts argue that their attorney was not allowed to ask follow-up questions, the record shows that counsel never sought such an opportunity.

Under the circumstances, the trial court did not abuse its discretion in failing to disqualify the seven jurors in question.[15]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 14, 2005.

*Flournoy, Morgan & Schnatmeier, Matthew C. Flournoy, Leonard & Rickman, Robert D. Leonard II*, for appellants.
*Brock & Clay, Eric A. Brewton*, for appellee.

---

[15] See *Remillard*, supra; *Clark v. State*, 265 Ga. App. 112 (593 SE2d 28) (2004).
[1] OCGA § 16-6-4 (c).
[2] OCGA § 16-6-2 (a).