## A07A0553. HANKERSON v. HAMMETT et al.
(647 SE2d 319)

MIKELL, Judge.

This lawsuit involves an automobile collision caused by Pinckney Victor Love, III, an employee of Ashley Hammett, d/b/a C&H Electrical ("defendant"). Tessamena Hankerson ("Tess") suffered severe brain injuries as a result of the collision and Everlyn Hankerson, her mother, filed suit as Tess's next friend to recover damages, claiming that Love was acting within the scope and course of his employment when he caused the collision, and that defendant is responsible under respondeat superior for Tess's personal injuries. The trial court granted defendant's motion for summary judgment on the issue of respondeat superior. For the reasons set forth below, we affirm.

> A defendant is entitled to summary judgment when there is no evidence to support at least one essential element of the plaintiff's case. We conduct a de novo review of a trial court's grant of summary judgment, and we view the evidence and all reasonable inferences drawn from it in a light most favorable to the nonmovant.[1]

So viewed, the record shows that on the date of the collision, June 7, 2003, Love was employed for the summer by defendant, a plumbing and electrical sole proprietorship run by Hammett and located in Waynesboro. Defendant owned a GMC utility truck, loaded with parts and materials. Love's employment duties included driving the truck, delivering invoices, picking up and delivering parts, transporting day laborers, paperwork, washing cars for Hammett and cutting his grass. Love's hours varied from five to twenty-five per week and he occasionally worked on weekends. Defendant provided Love with a work cell phone, in addition to his personal cell phone, and Love testified that he was "basically on call . . . when [Hammett] wanted . . . something" and could be contacted on either phone. Love testified that generally he would drive defendant's truck to his mother's home after work where it would be kept overnight so that he could pick up day laborers the following morning and bring them to work. At the end of the workday, Love would drive the workers home and then drive the truck to his mother's home where it would remain until the next morning, when the process would begin again. Most weekends Hammett took the truck, but sometimes Love had the truck, though he was not normally permitted to take it home on Fridays. Love did

---

[1] (Punctuation and footnotes omitted.) *Banks v. AJC Intl.*, 284 Ga. App. 22 (643 SE2d 780) (2007).

not have his own vehicle and relied on friends and family for transportation. Love further testified that when the truck was parked at his mother's home he maintained custody of the keys and could only use the truck for employment-related activities.

On Thursday morning, June 5, 2003, Love picked up day laborers in the truck and brought them to work. Love drove the truck home that evening around 6:00 p.m. On the morning of Friday, June 6, 2003, Love again picked up day laborers and transported them to work. Love drove the truck home after work Friday, with Hammett's permission, because he was going to work on Saturday, June 7, 2003. At approximately 7:30 Friday evening, Love drove the truck from his home to Shannon's bar in Augusta. After leaving Shannon's, Love rear ended a vehicle and was arrested for driving under the influence. Love was taken to the Richmond County jail, and the truck was impounded. While in jail, Love tried to contact Hammett. When Hammett could not be reached, Love called Greg Coursey, the Sheriff of Burke County, and requested that Coursey contact Love's mother and Hammett. Hammett testified that he received a call from Coursey on Saturday morning, June 7, 2003, advising that Love had been arrested for DUI while driving the company truck, and that his mother had come to pick him up but she was unable to sign a property bond. Hammett went to the jail where he executed a property bond, securing Love's release. Hammett did not see or communicate with Love at the jail or seek to obtain the truck from the impound yard because it was a Saturday and because he realized while completing the paperwork for the bond that the truck had been involved in an accident. Hammett testified that he did not want to waste the rest of his Saturday trying to regain possession of a wrecked vehicle. When asked whether he did anything to prevent Love from recovering the truck and/or driving it back to Waynesboro, Hammett responded as follows: "[i]t would stand to reason if the truck's impounded, the owner of the truck would have to get it out especially with it having been in an accident."

Upon his release from jail that afternoon, Love asked his mother to drive him to the impound yard so he could recover the truck and return it to defendant in Waynesboro. At approximately 2:00 p.m., while en route to Waynesboro, Love crashed defendant's truck into Hankerson's vehicle. Love did not have his cell phone with him at the time of the collision and he did not return to work after the collision.

1. Hankerson contends that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether Love was acting within the scope of his employment at the time of the collision. The general rule of respondeat superior provides that "[w]hen a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at

the time of the injury acting within the scope of his employment and on the business of the master."[2] This question is for a jury except in plain and indisputable cases.[3] When a vehicle involved in a collision is owned by an employer and operated by an employee, a presumption arises that the employee was acting in the scope of his employment at the time of the collision.[4] "Once this presumption arises the burden then shifts to the employer to rebut the presumption by evidence that is clear, positive and uncontradicted and that shows the servant was not in the scope of his employment."[5]

> The appropriate test to determine when a plaintiff in this kind of case can overcome a defendant's motion for summary judgment is . . . as follows: When the uncontradicted testimony of the defendant and/or the employee shows that the employee was not acting within the scope of his employment at the time of the accident, the plaintiff must show, in addition to the facts which give rise to the presumption that he was in the course of his employment, some other fact which indicates the employee was acting within the scope of his employment. If this "other fact" is *direct* evidence, that is sufficient for the case to go to a jury. However, when the "other fact" is *circumstantial* evidence, it must be evidence sufficient to support a verdict in order to withstand the defendant's motion for summary judgment.[6]

Hankerson contends that the following facts are sufficient to defeat the motion for summary judgment: (1) Love was "on call"; (2) Love had permission to keep the truck for the weekend in order to perform work for defendant on Saturday; (3) defendant bailed Love out of jail; and (4) defendant failed to revoke Love's authority to use the company truck. We disagree.

Though the evidence shows that Love was an "on call" employee and had permission to use defendant's truck over the weekend to

---

[2] (Citations omitted.) *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979). See also *Marketing Sales Indus. of Ga. v. Roberts*, 118 Ga. App. 718, 719 (165 SE2d 319) (1968) ("[t]o hold a master liable for a tort committed by his servant, the test is not that the act of the servant was done during the general term of the employment, but whether the servant was at that time serving the master; the master is not liable for an injury inflicted by the servant where the servant was engaged in some personal matter of his own and the act was entirely disconnected from the master's business") (citations omitted).

[3] *Remediation Resources v. Balding*, 281 Ga. App. 31, 32 (1) (635 SE2d 332) (2006).

[4] *Gordy Constr. Co. v. Stewart*, 216 Ga. App. 882 (456 SE2d 245) (1995).

[5] (Citation and punctuation omitted.) Id. at 882-883.

[6] (Citation and punctuation omitted; emphasis in original.) *Collins v. Everidge*, 161 Ga. App. 708, 709 (1) (289 SE2d 804) (1982).

perform work on Saturday, his operation of the truck at the time of the collision had no connection whatsoever with his employment. Rather, Love was returning from a purely personal trip to a bar in Augusta, a trip that had resulted in his arrest for DUI. The collision occurred while Love was returning from that jaunt and an evening in jail. The fact that Hammett bailed Love out of jail, that Love sometimes took the truck home on weekends in order to pick up day laborers on Monday, and that Love had permission to use the truck for work purposes on Saturday, had nothing to do with his activities on Friday evening and Saturday. Had the accident occurred after Love left Shannon's bar and was returning to Waynesboro he would not have been acting in the scope of his employment. That the collision occurred after Hammett bailed Love out of jail — without securing the release of his company truck — is insufficient evidence to place Love within the scope of his employment.

In *Collins*,[7] the defendant employer allowed its employee to use a company truck over the weekend. The employee was to pick up other employees on his way to work the following Monday. The employee was driving to the drugstore on Saturday to purchase medicine for himself when he collided with a motorcycle.[8] The trial court granted summary judgment to the employer and we affirmed, finding that the employee was in no way acting within the scope of his employment, and rejecting the plaintiff's claim that the fact that the employee was to use the truck on Monday to pick up laborers was sufficient to defeat the motion for summary judgment.[9] Hankerson argues that *Collins* does not apply here because Love had permission to use the truck on Saturday and was "on call."[10] This argument is meritless. Though Love had permission to drive the truck on Saturday for work purposes, his activities on Friday evening and Saturday were entirely disconnected from defendant's business.

2. Hankerson claims that Love's trip from Augusta to Waynesboro was a mission that was providing a direct benefit to his employer and furthering his employer's business purpose, i.e., the transportation and return of a company vehicle from an impound lot to the company's office. However, Hammett never requested or directed Love to return the truck to Waynesboro, and such direction cannot be inferred from Hammett's actions at the jail. "As a general rule, a

[7] Id.

[8] Id. at 708.

[9] Id. at 709-710 (1).

[10] See, e.g., *Southern Gas Corp. v. Cowan*, 89 Ga. App. 810, 811-813 (1) (81 SE2d 488) (1954) (evidence that employer provided employee with company vehicle and authorized him to use it for personal needs coupled with fact that employee was on call at all hours of the night and day sustained finding that employee was acting within scope of employment at time of accident).

servant in going to and from his work . . . acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work."[11] This rule does not apply, however, when an employee undertakes a "special mission" at the specific direction or request of the employer.[12] In the absence of specific direction by defendant, Love's unilateral decision to return the company truck he caused to be impounded during a personal trip wholly unrelated to his job cannot be considered a special mission.

Even if Love had been driving the truck from Augusta to Waynesboro with the sole purpose of performing work for defendant once he arrived at defendant's place of business, as we noted previously, an employee commuting to and from work acts only for his own purposes and not for those of his employer. Hankerson argues that this rule is inapplicable here because Love was not traveling from his home to work, but rather was returning a company vehicle for his employer from an impound lot. We cannot agree with the contention that defendant should be liable for Love's actions while driving a vehicle that he was responsible for having impounded, where defendant never authorized release of the vehicle and never directed Love to recover the vehicle from the impound lot or to return it to Waynesboro.

Additionally, Hankerson's claim that Hammett never revoked Love's authority is unpersuasive as Love never had permission to drive the truck to a bar in Augusta. Love had permission to use the truck in going to and from *home* and work. He did not have permission to use the truck in going to and from Augusta and work.

3. Hankerson contends that Love's actions were within the scope of his employment because defendant ratified them by bailing Love out of jail without making any attempt to reclaim the truck or the keys and by not advising Love not to drive the truck from the impound yard. "An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment."[13] In light of

---

[11] (Citations and punctuation omitted.) *Jones v. Aldrich Co.*, 188 Ga. App. 581, 583 (1) (373 SE2d 649) (1988). See also *Chattanooga Publishing Co. v. Fulton*, 215 Ga. 880, 882 (3) (114 SE2d 138) (1960) (employer was not liable for acts of employee delivery driver who had left his assigned delivery area to visit his wife's parents and was on his way back to work to pick up more deliveries when collision occurred).

[12] See *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 353 (634 SE2d 153) (2006).

[13] (Citations omitted.) *Travis Pruitt & Assoc. v. Hooper*, 277 Ga. App. 1, 3-4 (1) (625 SE2d 445) (2005).

our rulings, that Love's actions were purely personal and in no way performed to further defendant's business, defendant cannot be said to have ratified Love's actions and assumed liability for them.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 30, 2007.

*Bryan Hill*, for appellant.
*Glover & Blount, Percy J. Blount*, for appellees.