A11A1632. WOOD v. B&S ENTERPRISES, INC.
(723 SE2d 443)

DILLARD, Judge.

In this wrongful-death action, Janet Wood, on behalf of the estate of her deceased husband, sued B&S Enterprises, Inc., alleging that the company was vicariously liable for the negligence of its employee, who fatally injured Daniel Wood in a motor-vehicle accident. Following a jury verdict and judgment in favor of B&S Enterprises, Wood appeals, arguing that the trial court erred in (1) charging the jury on the "special mission" doctrine, (2) refusing to charge the jury that use of a cell phone may constitute acting within the scope of one's employment, (3) denying the jury's request that certain testimony be repeated, (4) failing to excuse a potential juror for cause, and (5) finding that sufficient evidence supported the jury's verdict. For the reasons set forth infra, we affirm.

Construed in favor of the verdict,[1] the evidence shows that B&S Enterprises is a small construction company, which is solely owned and operated by George Barker. Other than Barker, B&S does not have any full-time employees. Instead, B&S hires independent contractors to assist Barker with various residential construction projects, usually involving the framing of houses. B&S pays those contractors for hours worked at the end of each week and does not

---

[1] *See Horton v. Hendrix*, 291 Ga. App. 416, 416 (662 SE2d 227) (2008).

withhold any taxes from their paychecks.

In the early morning hours on August 11, 2008, Francisco Esquibel—who had worked as an independent contractor for B&S on numerous occasions—was driving northbound on Georgia Highway 59, along with several co-workers, and was heading toward B&S's workshop, which is located across the street from Barker's home.[2] As Esquibel approached Industrial Park Drive, he failed to notice that motorcyclist Daniel Wood had stopped to turn left at the intersection but was waiting for an oncoming motorist to turn right before he could do so. Consequently, Esquibel's vehicle never slowed and instead collided into the back of Wood's motorcycle. And as a result of the impact, Wood was thrown nearly 100 feet down the road and instantly killed.

Thereafter, Janet Wood, on behalf of her husband's estate, sued B&S, alleging that her husband's death was a result of Esquibel's negligence and that B&S was liable for Esquibel's negligence on the grounds of respondeat superior. B&S filed a motion for summary judgment, arguing that it could not be held liable for Esquibel's negligence because Esquibel was an independent contractor and because, even if he was deemed an employee, he was not acting within the scope of his employment at the time of the accident. Finding that questions of fact existed as to both arguments, the trial court denied B&S's motion, and the case proceeded to trial.

During the trial, the motorist who witnessed the accident testified regarding her observations, and several police officers testified regarding their investigation. In addition, Barker testified that although Esquibel was on his way to work on the morning of the accident, he was working as an independent contractor and not as an employee of B&S. Barker further testified that he (and not B&S) personally owned the vehicle that Esquibel was driving the morning of the accident; that he had loaned the vehicle to Esquibel for his unlimited use; and that he had not directed Esquibel to perform any particular task on his way to B&S's workshop that morning.[3]

At the conclusion of the trial, the jury rendered a verdict in favor of B&S, and one month later, the trial court issued a judgment affirming that verdict. Wood subsequently filed a motion for new trial, which the trial court denied after holding a hearing on the matter. This appeal follows.

---

[2] Because his own vehicle was having mechanical problems, Esquibel was driving a vehicle that Barker personally owned but had loaned to Esquibel for his unlimited use.

[3] Following the accident, Esquibel was charged with, inter alia, homicide by vehicle in the second degree. Barker posted his bond, and Esquibel continued to work as an independent contractor for B&S for several more months. However, sometime in December 2008, Esquibel ceased all communication with Barker and could not be located to testify at trial.

1. Wood contends that the trial court erred in charging the jury on the "special mission" doctrine as it applies to the theory of respondeat superior. We disagree.

At the outset, we note that "a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law."[4] Additionally, "the review of allegedly erroneous jury instructions is a legal question, and we therefore owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5] With these guiding principles in mind, we will now address Wood's claim of error by first explaining what the "special mission" doctrine entails.

Under Georgia law, to hold a master liable for a tort committed by his servant, "it must appear that at the time of the injury the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment."[6] Indeed, "[t]he test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master."[7] Furthermore, "[a]s a general rule, a servant in going to and from his work acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work."[8] However, this general rule does not apply "when an employee undertakes a 'special mission' at the specific direction or request of the employer."[9]

And here, B&S included an instruction regarding the "special mission" doctrine in its charge requests. Over Wood's objection, the trial court agreed that the charge was appropriate and thus instructed the jury as follows:

> Even when the employee is driving the employer's vehicle, the employee's travel to and from work is not within the scope of employment unless the employee undertakes a special mission at the specific direction of his employer or that special circumstances exist.

---

[4] *Boston Men's Health Ctr., Inc. v. Howard*, 311 Ga. App. 217, 221 (1) (715 SE2d 704) (2011) (emphasis and punctuation omitted).

[5] *Id.* (punctuation omitted).

[6] *Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011) (emphasis and punctuation omitted).

[7] *Id.* (emphasis and punctuation omitted).

[8] *Hankerson v. Hammett*, 285 Ga. App. 610, 613-14 (2) (647 SE2d 319) (2007) (punctuation omitted).

[9] *Id.* at 614 (2).

The application of the special mission exception requires that the errand or mission itself be a special or uncustomary one, made at the employer's request or direction. An employee cannot unilaterally determine to undertake a special mission. The directive must come from the employer and contrary to Wood's argument, there was no evidence to support a conclusion that Esquibel had undertaken a special mission at B&S's request at the time of the accident. Indeed, although there was evidence that Esquibel was driving several co-workers to work that morning, Barker testified that he had not requested that Esquibel do so, and therefore, there was no evidence that Esquibel was doing so at B&S's direction. Accordingly, this charge was apt, tailored to the evidence, and a correct statement of the applicable law, and the trial court did not err in giving it.[10]

2. Wood also contends that the trial court erred in refusing to give the jury several instructions regarding how an employee's use of a cell phone relates to determining whether the employee was acting within the scope of his employment at a particular time. However, at the conclusion of the trial court's instructions to the jury, Wood objected only to the court's charge on the "special mission" doctrine. And in order to preserve appellate review of a charging error, "an objection must clearly direct the attention of the trial court to the claimed error and must be stated with sufficient particularity to leave no doubt as to the specific ground upon which the charge is challenged."[11] Thus, Wood has waived this claim of error.[12]

Moreover, even if Wood had objected, the trial court's refusal to give the jury Wood's instructions regarding the use of cell phones was not in error. Citing *Hunter v. Modern Continental Construction Co., Inc.*[13] and *Clo White Co. v. Lattimore*,[14] Wood requested several nonpattern jury instructions that essentially stated that an employer-provided cell phone and the employee's use of that cell phone while commuting to work may provide evidence that the employee was acting within the scope of his employment. But contrary to Wood's assertion, both *Hunter* and *Clo White Co.* hold

---

[10] *See Betsill v. Scale Sys., Inc.*, 269 Ga. App. 393, 396-97 (1) (604 SE2d 265) (2004) (holding that even when employee was driving employer's vehicle, employee was not acting within the scope of his employment absent evidence that he had undertaken a special mission at his employer's direction); *Hankerson*, 285 Ga. App. at 614 (2) (same).

[11] *Thompson v. Princell*, 304 Ga. App. 256, 261 (b) (696 SE2d 91) (2010) (punctuation omitted); *see also* OCGA § 5-5-24 (a) ("[I]n all civil cases, no party may complain of the giving *or the failure to give* an instruction to the jury unless he [or she] objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." (emphasis supplied)).

[12] *See Thompson*, 304 Ga. App. at 261 (b).

[13] 287 Ga. App. 689 (652 SE2d 583) (2007).

[14] 263 Ga. App. 839 (590 SE2d 381) (2003).

that an employee might be acting within the scope of his employment when there is evidence that the employee "may have actually been on the phone regarding matters of company business *at the time of the accident.*"[15] And here, while there was evidence that Barker had purchased a cell phone for Esquibel's personal use, for which Esquibel was repaying Barker, there was no evidence that Esquibel was using the phone to call anyone, much less Barker, at the time of the accident. Given the foregoing, Wood's requested cell phone jury instructions were not tailored to the evidence, and the trial court did not err in refusing to give them.[16]

3. Wood further contends that the trial court erred in denying the jury's request that portions of Barker's deposition, with which Wood attempted to impeach Barker during Barker's trial testimony, be repeated after the jury had begun their deliberations. We disagree.

The trial court may, in its discretion, "permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations[, but t]he court may also, in its discretion, refuse such a request."[17] Indeed, it has long been the law in Georgia that "a judgment will not be reversed because the trial court declines to aid the jury in recalling the evidence and refuses a request to have certain testimony read back."[18]

And here, during its deliberations, the jury sent a note to the trial court, indicating that the jurors wanted to review a portion of Barker's deposition testimony that Wood used in an attempt to impeach Barker on cross-examination. Specifically, the note stated, "We want to see or hear these references from the deposition: Page 149, Line 8; Page 54; and Page 45, Line 3; and Page 23." And after consulting with the parties, the trial court stated that it typically did not replay only portions of an examination or cross-examination of a witness. Consequently, the trial court brought the jury into the courtroom and responded to the request as follows:

> Ladies and gentlemen, the entirety of the deposition itself, of course, was not introduced into evidence. The Court is unable to permit you to see or hear those references from the deposition. You will have to recall from your collective

---

[15] *Id.* at 840; *see Hunter*, 287 Ga. App. at 691 (reversing summary judgment in favor of defendant because plaintiff "came forward with evidence showing that [defendant's employee] may have been on his cell phone regarding company business when the accident occurred").

[16] *See Sellers v. Burrowes*, 302 Ga. App. 667, 672 (3) (691 SE2d 607) (2010) (holding that trial court did not err in refusing to give charge because plaintiff failed to demonstrate that his requested charge was tailored to the evidence).

[17] *Fowler Props., Inc. v. Dowland*, 282 Ga. 76, 80 (4) (646 SE2d 197) (2007) (punctuation omitted).

[18] *Id.*

memory what questions were asked and what responses were made by the various witnesses in the case.

On appeal, Wood claims that the trial court's response to the jury's request prejudiced her case because it prohibited the jury from considering evidence that impeached Barker's testimony at trial. However, Wood's argument is belied by the fact that the jury did hear this evidence during trial. In fact, before he was even called as a defense witness, Barker was first subjected to a lengthy cross-examination, during which Wood's counsel pointed out numerous alleged inconsistencies between Barker's earlier deposition and his trial testimony. Accordingly, the trial court's refusal to repeat merely a portion of that cross-examination was not an abuse of discretion.[19]

4. Wood also contends that the trial court committed reversible error in failing to excuse a potential juror for cause. We disagree.

Georgia law presumes that potential jurors are impartial, "and the burden of proving partiality lies with the party seeking to have the juror disqualified."[20] And a "prospective juror's doubt about his or her own impartiality does not demand as a matter of law that he or she be excused for cause."[21] Nevertheless, a potential juror must be excused for cause "if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case based on the evidence and the court's charge on the evidence."[22] Furthermore, "trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon 'the ordinary general rules of human experience. . . .'"[23] In fact, "a trial court may only be reversed upon a finding of 'manifest abuse' of that discretion."[24]

During jury selection in the case sub judice, Wood's counsel asked the jurors collectively if any of them had a problem with holding an employer liable for its employee's negligence. One of the jurors responded, "I think that if the employer does his job and interviews his people outright and his people make a mistake I don't think he should be required to pay up." When Wood's counsel then asked if the juror would have trouble following the law, the juror replied: "Yeah, I would."

---

[19] *See id.* (holding that trial court did not err in refusing to parse witness's testimony or to have it replayed in its entirety); *Compton v. State*, 179 Ga. 560, 567 (6) (176 SE 764) (1934) (same).

[20] *Elliott v. Home Depot U.S.A., Inc.*, 275 Ga. App. 865, 867 (2) (622 SE2d 77) (2005) (punctuation omitted).

[21] *Id.* (punctuation omitted).

[22] *Id.*

[23] *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (punctuation omitted).

[24] *Id.*

Shortly thereafter, the trial court questioned the juror about his earlier statement, and the following colloquy ensued:

> [Juror]: If they've done their — I guess if they've got a driver's license it looks like the employer isn't responsible, then. I don't think he should have to pay for whatever that employee did because of their stupidity or whatever. I don't think that the — I think the employers are having to pay for things that shouldn't be their responsibility.
>
> . . .
>
> The Court: Well, an employer is responsible for the acts of an employee when that employee is in the — is employed by and is acting in the scope of his employment at the time. Are you saying you just can't follow that?
>
> [Juror]: I won't like following it, but I would do it as the law says I'm supposed to.
>
> [Plaintiff's counsel]: But you're against that principle of law?
>
> [Juror]: I'm against that principle, period. I think that it's been overdone and them making employers or owners of places pay for stuff, that the person who was responsible for doing it should be the one paying. Not the employers.

At that point, Wood's counsel requested that the juror be struck for cause. However, the trial court continued its inquiry and asked, "But you're saying — are you saying you can put aside that personal belief and follow the law if I tell you the law is different?" The juror then responded, "Yes. I wouldn't go to jail for the difference." And based on the juror's responses, the trial court denied Wood's request that the juror be struck for cause. Consequently, Wood used a peremptory strike to dismiss the juror.

On appeal, Wood argues that the trial court erred in refusing to strike this juror for cause and that the court's refusal forced her to use her peremptory strikes that she otherwise would have used on a different juror. However, we disagree that the court erred. It is important to note that the juror in this instance indicated that he had an unfavorable opinion about holding employers responsible for an employee's negligence, but the juror did not express a bias for or against either of the parties. And "[a] juror who indicates a willingness to try to be objective and whose reservations relate to an issue in the case rather than to a party may be eligible for service."[25] Given that the juror in this instance ultimately stated that he could put

---

[25] *Elliott*, 275 Ga. App. at 868 (2) n.8.; *see Reddick v. State*, 264 Ga. App. 487, 496 (5) (a) (591 SE2d 392) (2003) (holding that "a juror who expresses a willingness to try to be objective

aside his personal beliefs and follow the law, the trial court's refusal to grant Wood a strike for cause did not constitute a manifest abuse of discretion.[26]

5. Finally, Wood contends that the jury's verdict and the trial court's judgment was contrary to the weight of the evidence. This contention lacks merit.

It is well established that "[w]here a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it, as the jurors are the sole and exclusive judges of the weight and credit given the evidence."[27] In fact, the appellate court must construe the evidence "with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict."[28]

Here, as we noted in Division 1, supra, there was ample evidence that Esquibel was merely commuting to work when the fatal accident occurred, and there was no evidence that Barker had directed him to undertake any sort of special mission on his way to work. Thus, there was sufficient evidence to support the jury's finding that Esquibel was not acting within the scope of his employment with B&S at the time of the accident.[29] Accordingly, we affirm the jury's verdict and the trial court's judgment in favor of B&S.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED FEBRUARY 16, 2012.

*Troy R. Millikan,* for appellant.
*Hicks, Casey & Foster, Richard C. Foster, Andrea A. Guariglia,* for appellee.

---

and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service").

[26] *See Elliott,* 275 Ga. App. at 868 (2) (holding that in the absence of any evidence that jurors' opinions about preexisting injuries were so fixed and definite that the jurors could not be fair and impartial, the court did not abuse its discretion in failing to excuse them for cause).

[27] *Harris v. Tutt,* 306 Ga. App. 377, 378 (1) (702 SE2d 707) (2010) (punctuation omitted).

[28] *Id.* (punctuation omitted).

[29] *Torres v. Tandy Corp.,* 264 Ga. App. 686, 688-89 (1) (592 SE2d 111) (2003) (affirming the jury's verdict in favor of defendant in light of the fact that there was ample evidence indicating that defendant's employee was merely commuting to work and had not undertaken a special mission at employer's direction when the injury to plaintiff occurred).