**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 25, 2022**

# In the Court of Appeals of Georgia

A21A1457. COTTON v. PRODIGIES CHILD CARE MANAGEMENT, LLC, d/b/a UNIVERSITY CHILDCARE CENTER.

GOBEIL, Judge.

Following an automobile collision, Andrea Leah Cotton filed a personal injury complaint against Bianca Bouie and Bouie's then-employer, Prodigies Child Care Management, also known as University Childcare Center ("University Childcare"). Ultimately, the trial court granted summary judgment to University Childcare, rejecting Cotton's theory of respondeat superior. Cotton appeals, arguing that the trial court erred in granting summary judgment because there was sufficient evidence in the record to render the question of respondeat superior a jury issue. For the reasons set forth below, we agree with Cotton and reverse the trial court's judgment.

On a ruling of a motion for summary judgment, this Court reviews de novo the law and the evidence, viewing the facts and inferences in favor of the nonmoving party. *Holbrook v. Stansell*, 254 Ga. App. 553, 553 (562 SE2d 731) (2002). The record in this case shows that on January 26, 2018, Bouie, driving a Toyota Camry, caused an accident with a Toyota Tacoma being driven by Cotton. At that time, Bouie was enrolled in a college course in order to advance her education. She had been employed as a daycare teacher at University Childcare since July 2016. University Childcare recently had made Bouie a lead teacher based on her continuing education, but it did not require Bouie to attend any college classes or pay her tuition. To earn extra credit for her college class, Bouie volunteered to perform in a puppet show, and she used her lunch break from work on the day of the accident to attend the show.

When the accident occurred, Bouie was returning to University Childcare from the puppet show, and she was running late. According to Bouie, she had a coworker who had been critical of her, and Bouie feared that this coworker would use her lateness from lunch as a reason to criticize her. Bouie had her phone in her hand while driving. Intending to call University Childcare to let her manager know that she was going to arrive later than anticipated, Bouie looked away from the road to scroll

through the contacts on her phone[1] to find the number for University Childcare. Bouie never actually found the phone number she was seeking, nor initiated an actual phone call with her employer.

By the time Bouie looked back at the road, her vehicle was in the median. Trying to avoid a collision, Bouie turned her vehicle more fully, but the oncoming vehicle struck her passenger side. Cotton's truck hit Bouie's car at 2:24 p.m. Bouie admitted that the accident was "a hundred percent" her fault, and Bouie was cited for distracted driving and failure to maintain lane.

Cotton filed a complaint, initially against only Bouie, but later adding University Childcare as a defendant. The amended complaint asserted that University Childcare was responsible for Bouie's actions under a theory of respondeat superior, as she was acting within the scope of her employment and in furtherance of University Childcare's business at the time of the accident. Specifically, Cotton asserted that, although on her lunch break, Bouie was attending an event related to her educational degree during that break, which Cotton asserts was connected to Bouie's employment. And University Childcare had "strict teacher-child classroom

---

[1] The phone was Bouie's personal cell phone, and University Childcare did not provide or pay for her cell phone.

3

ratios to maintain throughout the day," which made Bouie's attempted call to her employer "necessary and in the interest of [University Childcare's] business and personal affairs." Cotton also raised a claim of negligent training and supervision against University Childcare.

After conducting discovery, University Childcare moved for summary judgment. It argued that Bouie was on her lunch break, off the clock, in her own personal vehicle, and using her own personal cell phone at the time of the accident, meaning that she was acting on her own personal business and not within the scope of her employment. After a hearing, the trial court granted University Childcare's motion for summary judgment. This appeal followed.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." OCGA § 9-11-56 (c). Here, Cotton sued University Childcare under a theory of respondeat superior. Under the doctrine of respondeat superior, employers are liable for an employee's tortious conduct when, at the time of the injury, the employee is acting within the scope of her employment

4

and furthering her employer's interests. OCGA § 51-2-2; *Allen Kane's Major Dodge, Inc. v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979).

Whether an employee is acting within the scope of employment is normally a question for the jury "except in plain and undisputable cases." *Hankerson v. Hammett*, 285 Ga. App. 610, 612 (1) (647 SE2d 319) (2007) (citation omitted). "[S]ummary judgment for the employer is appropriate where the evidence and all reasonable inferences drawn therefrom show that the employee was not engaged in furtherance of the employer's business, but was on a private enterprise of the employee's own." *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000) (citation omitted).

Georgia law has consistently held that employees do not act within the scope of employment when they are commuting to and from work, see, e.g., *Centurion Indus., Inc. v. Naville-Saeger*, 352 Ga. App. 342, 345 (1) (834 SE2d 875) (2019), nor when they are on their lunch break, *Nelson v. Silver Dollar City, Inc.*, 249 Ga. App. 139, 145 (4) (547 SE2d 630) (2001). There are, however, exceptions to this general rule. In this appeal, the exception at issue[2] is whether "special circumstances" existed

---

[2] Cotton concedes that this is the only exception possibly applicable to her claim.

5

such that Bouie was acting within the scope of her employment while traveling to work. *Clo White Co. v. Lattimore*, 263 Ga. App. 839, 840 (590 SE2d 381) (2003).

Under Georgia law, the "special circumstances" exception may arise when factors such as the following are present during an employee's work commute: (1) carrying work materials in the employee's car; (2) using a phone for work-related calls; (3) receiving a stipend from an employer for a vehicle; or (4) being "on call." *DMAC81, LLC v. Nguyen*, 358 Ga. App. 170, 173 (1) (853 SE2d 400) (2021) (citations omitted). This court has found sufficient evidence of special circumstances to raise a jury question where an employee gets into a car accident while commuting to work when they are on the phone regarding business-related matters or are distracted by an incoming business-related call. See *Hunter v. Modern Continental Constr. Co.*, 287 Ga. App. 689, 691 (652 SE2d 583) (2007); *Clo White*, 263 Ga. App. at 840.

Relying primarily on *Clo White* and *Hunter*, Cotton argues that Bouie's use of her cell phone in trying to find her employer's number in order to report her late arrival from lunch constituted "special circumstances" such that she was acting within the scope of her employment at the time of the accident, or at least there is a question of fact for the jury to decide. In *Clo White*, phone records showed that an employee

6

driving to work made three calls to his employer around the time that he caused a car accident. 263 Ga. App. at 839. The purpose of at least one of the calls was "to inform the night supervisor of [the employee's] arrival time, and to obtain information that would assist [the employee] in fulfilling his duties at the office." Id. We held that evidence showing that the employee "may have" been on the phone regarding matters of company business at the time he caused the car accident was sufficient to create a jury question on the issue of special circumstances rendering him within the scope of employment while driving to work. Id. at 840.

In *Hunter*, phone records reflected that an employee driving to work made a call to a coworker just before causing a car accident. 287 Ga. App. at 690. The coworker also testified that he called the employee around the time of the accident, but the employee did not answer. Id. The purpose of these calls was business-related. Id. We held that evidence showing that the employee "may have been on his cell phone regarding company business when the accident occurred or that he might have been distracted by an incoming call from [the coworker]" was sufficient to raise a jury question as to the existence of special circumstances and the potential for vicarious liability for the employer. Id.

In arguing that Bouie's use of her cell phone was a special circumstance, Cotton stresses that University Childcare was required by law and internal policy to maintain specific teacher-to-child ratios, and the daycare implemented a strict attendance policy to ensure that those ratios were respected.[3] See Ga. Comp. R. & Regs. 591-1-1-.32 (administrative code setting teacher-to-child ratios based on age). Under this attendance policy, teachers were required to notify their supervisor if they were going to be late or absent for any reason. Simply notifying a supervisor was not enough, the attendance policy required that teachers actually speak to their supervisor to report any absence or tardiness to ensure that the supervisor received the notification.

On the day of the accident, Bouie clocked out for lunch at 12:53 p.m. Bouie anticipated that the puppet show might take a little more than an hour, and asked her supervisor before leaving if she could return a little late, "like 2[:00], a little after 2[:00]." After the puppet show ended, Bouie realized that it was "later than what [she] had told [her] manager." Cotton argues that Bouie's attempt to contact her employer was "exactly what her employer told her to do in such circumstances;" the attempted

---

[3] As described by Bouie in her deposition, University Childcare employed various types of substitutes to cover classrooms if a situation arose where there was going to be a shortage of teachers to maintain the state-mandated ratios.

call was "mandated by her job duties," and thus she within the scope of her employment for University Childcare when she caused the collision. Although we do not agree with Cotton's insistence that Bouie's actions were affirmatively within the scope of her employment, we do conclude that University Childcare has not established as a matter of law that they were not.

University Childcare argues that Bouie's decision to call her employer while driving was purely personal. When asked about why she decided to call University Childcare when she realized she was going to be late, Bouie did not cite the attendance policy as her motivation. Rather, she stated that it was "the right thing to do" to let her employer know when to expect her back at work.[4] And as described above, Bouie had a coworker she was concerned might use her tardiness against her. Further, Bouie knew that there were "lunch breakers" who were available to fill in if her classroom fell below the state-mandated teacher-to-child ratio.[5] However, Bouie's

_____

[4] Although we conclude that Bouie's subjective motivation for making the phone call is not dispositive of whether she was acting in the scope of her employment at the time of the accident, we note that she also stated that she believed calling was the right thing to do because a business "need[s] to know what's going on," indicating that there was some motivation to benefit her employer with the information needed to conduct its business.

[5] There is very little information in the record about the use of these substitute employees. They were not mentioned in University Childcare's statement of material

subjective motivation in making the call is not the central question. The test for whether University Childcare may be found liable for Bouie's actions is whether she was at the time of the injury "engaged in the master's business" or "at that time serving the master." *Clo White*, 263 Ga. App. at 840 (citation, punctuation, and emphasis omitted).

We agree with Cotton that she presented sufficient evidence to raise a jury question on this issue. At the summary judgment stage, we construe "the evidence and all reasonable inferences in the light most favorable to the nonmovant." *Cottingham & Butler, Inc. v. Belu*, 332 Ga. App. 684, 685 (774 SE2d 747) (2015). Given the evidence that University Childcare stressed to its employees the importance of reporting tardiness, and Bouie was in the act of complying with her employer's policy when she caused the accident, we cannot say that this is a "plain and indisputable" case of an employee acting entirely outside the scope of their employment. *Hankerson*, 285 Ga. App. at 612 (1).

---

facts or memorandum in support of its motion for summary judgment. It is unknown, for example, how many substitutes were employed, how a teacher would request one, or how quickly they could arrive. Further, it is unknown if there were "lunch breakers" available on the day of Bouie's accident. In any event, the existence of these substitute teachers did not excuse University Childcare's employees from the requirement that they immediately report when they become aware that are not going to be in their classroom as expected.

10

University Childcare counters that there was evidence in *Clo White* and *Hunter* that the employees may have actually been on the phone at the time of the accidents in those cases, whereas here, Bouie testified conclusively that she had not yet initiated the phone call when the accident occurred. We, however, find this distinction to be one without a difference in this case. Although Bouie had not actually selected her employer's number from her contacts list, she indisputably was using her phone to call her employer at the time when she caused the accident. If the potential distraction from seeing that one has an incoming call from a coworker is sufficient to create a jury question on this issue, as in *Hunter*, then it follows that the distraction of manually searching for one's employer's phone number is also sufficient to create a jury question here.

Additionally, we do not find the cases relied upon by University Childcare to support its argument that there were no special circumstances to be compelling here. For example, in *Farzaneh v. Merit Const. Co.*, 309 Ga. App. 637, 637 (710 SE2d 839) (2011), an employee with a company-issued cell phone in his car was found to be outside the scope of employment at the time he caused a car accident, yet there was no evidence that the employee used the phone at any point before or after the accident. Similarly, in *Braddy v. Collins Plumbing and Constr. Inc.*, 204 Ga. App.

11

862, 868 (420 SE2d 806) (1992), the court found no jury question on special circumstances existed where the employee was driving a company-owned vehicle containing a two-way radio (for the purpose of communicating with his employer), was driving home from work, and where there was no evidence that the radio was being used at the time of the accident. See also *Wood v. B & S Enterprises, Inc.*, 314 Ga. App. 128, 132 (2) (723 SE2d 443) (2012) (finding no entitlement to jury instructions on employee's use of cell phone when "there was no evidence" that employee was using an employer-supplied cell phone at the time of the accident); *Archer Forestry, LLC v. Dolatowski*, 331 Ga. App. 676, 680 (3) (771 SE2d 378) (2015) (employee's use of cell phone "within 25 minutes prior to" a car accident to call his employer was not sufficient to create a jury question on scope of employment because there was no evidence that employee was calling his employer at the time of the accident). Similar to this case, the foregoing cases do not involve evidence of actual calls around the time of their respective accidents. But, critically, nor do these cases involve evidence of manual (and potentially distracting) steps taken toward making a call around the time of the accident. Here, Bouie was actively in the process of initiating a call with her employer to report her tardiness, as she apparently was required to do under company policy, at the time of the accident. Therefore, under the

12

facts of this case and given the standard of review favoring the nonmovant, we hold that Cotton presented evidence sufficient to give rise to a jury question on University Childcare's liability, as Bouie was potentially acting within the scope of her employment at the time of the accident.

*Judgment reversed. Barnes, P. J. concurs. J. Markle, dissents.*

A21A1457.  COTTON  v.  PRODIGIES  CHILD  CARE
        MANAGEMENT, LLC.


MARKLE, Judge, dissenting.

The majority finds that there is a jury question about whether the facts of this case constitute a special circumstance that would hold the employer liable for the employee's negligence where its employee was scrolling through the contacts in her personal phone for the employer's phone number while driving back to work from her lunch break.  *DMAC81, LLC v. Nguyen*, 358 Ga. App. 170, 174 (1) (853 SE2d 400) (2021). I would not extend our precedent so far as to find that this factual scenario could constitute a special circumstance. For this reason, I respectfully dissent.


"The law is clear that in the absence of special circumstances a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer." (Citation omitted.) *DMAC81, LLC*, 358 Ga. App. at 173 (1). The majority finds there was a special circumstance here because Bouie was calling her employer to notify it that she would be late, which she was required to do by her

employer's policy. But the cell phone was Bouie's personal phone; University Childcare neither provided it to her, nor paid for it, nor even required her to have one. And, on the day of the accident, it is undisputed that Bouie had not dialed her employer's number or spoken to anyone at the day care when the accident occurred.[1]

In concluding that these facts raise a jury question, the majority relies on two cases, both of which I find distinguishable. First, in *Clo White Co.*, 263 Ga. App. 839 (590 SE2d 381) (2003), the employee often used his cell phone to make and receive work-related calls, and he used the phone on the day of the accident to notify his employer of his late arrival and to get information in preparation for his job duties once he arrived. 263 Ga. App. at 839. Additionally, in *Hunter v. Modern Continental Construction Co.*, 287 Ga. App. 689 (652 SE2d 583) (2007), this Court relied on *Clo White Co.* and concluded that there was a jury question where the employee may have been on a call, or distracted by an incoming call, at the time of the accident, and the employee had given his cell phone number to other employees to contact him. 287

---

[1] Nor would I conclude that the call was in furtherance of the employer's business. At most, it was Bouie attempting to fulfill her duty to notify her employer, and not to fulfill any of University Childcare's obligations. *Dougherty Equip. Co. v. Roper*, 327 Ga. App. 434, 437 (1) (a) (757 SE2d 885) (2014). As to University Childcare's obligation to maintain proper ratios, the company had floating staff members that could fill in to maintain the required staff-to-child ratios while teachers were on lunch breaks.

2

Ga. App. at 691.[2] In both of these cases, the employee regularly used his cell phone to make and receive work-related calls. But the evidence here is the opposite. There was no allegation that Bouie used her phone for work-related calls. Moreover, nothing prevented Bouie from making the call before she began driving or from pulling over to safely scroll through her phone for the number; in other words, the distraction was caused solely by Bouie's own decision and not by any distraction from a work-related call.

The fact that University Childcare had a policy requiring employees to notify the day care of tardiness does not create a special circumstance, and I would not read the policy so broadly as to encompass Bouie's conduct.[3] Cf. *Farzaneh v. Merit*

---

[2] I would further note that these two cases applying the special circumstances exception date back at least 15 years. Since that time, cell phone use has risen, and many states now have laws prohibiting the use of a cell phone while driving, although Georgia's own "hands free" law did not go into effect until after Bouie's accident. OCGA § 40-6-241 (effective July 1, 2018); see also National Conference of State Legislatures, *Traffic Safety Trends: State Legislative Action 2014*, available at ncsl.org/research/transportation/traffic-safety-trends-state-legislative-action-2014.aspx (last visited February 10, 2022).

[3] In her deposition testimony, Bouie stated that she did not remember any such policy, and that she was calling her manager because it was the right thing to do and because she feared another employee was going to cause trouble for her if she was late. University Childcare also had a policy that employees were not to use their cell phones while working.

3

*Constr. Co.*, 309 Ga. App. 637, 641-642 (710 SE2d 839) (2011) (declining to read employer's policy on auto safety so broadly as to create special circumstance). It is common for employers to have a policy that requires employees to call in if the employee will be late or absent. To view the evidence such as this as creating a jury question would essentially result in the exception swallowing the rule. *DMAC81, LLC*, 358 Ga. App. at 176 (2); see also *Miller v. American Greetings Corp.*, 161 Cal. App. 4th 1055, 1063 (74 Cal Rptr 3d 776) (2008) ("We envision the link between respondeat superior and most work-related cell phone calls while driving as falling along a continuum. Sometimes the link between the job and the accident will be clear, as when an employee is on the phone for work at the moment of the accident. Oftentimes, the link will fall into a gray zone, as when an employee devotes some portion of his time and attention to work calls during the car trip so that the journey cannot be fairly called entirely personal. But sometimes, as here, the link is de minimis . . . . When that happens, we find no respondeat superior as a matter of law."); compare *Ellender v. Neff Rental*, 965 So2d 898, 902 (La. Ct. App. 2007) (vicarious liability imposed where accident occurred while employee was using employer-provided cell phone; employee frequently used cell phone for work-related calls while driving; and the employee was actually conducting business at the time

4

of the accident). Because I would conclude that there is no factual question regarding the employer's vicarious liability on these facts, I respectfully dissent.